1

2

3

4

5

6

### SUPERIOR COURT OF WASHINGTON FOR SPOKANE COUNTY

7

ERIKA HENRY and DANIEL HENRY, wife
and husband, with two minor children K.H.

8

and B.H.

CASE NO: 22200401-32

9

Plaintiffs,

**SUMMONS TO WASHINGTON
DEPARTMENT OF HEALTH**

10

vs.

11

WASHINGTON DEPARTMENT OF
HEALTH, their officers, agents, or assigns;

12

UMAIR A. SHAH, JESSICA TODORVICH,
ROY CALICA, and JOHN DOES 1-10.

13

Defendants.

14

**NOTICE: YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF. THE**

15

**COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE**
**UNLESS YOU RESPOND WITHIN TWENTY (20) DAYS OR WITHIN SIXTY (60)**

16

**DAYS IF THIS SUMMONS WAS SERVED OUTSIDE THE STATE OF WASHINGTON.**
**READ THE INFORMATION BELOW.**

17

18

**TO: DEFENDANT WASHINGTON DEPARTMENT OF HEALTH**

19

A lawsuit has been started against you in the above-entitled court by ERIKA HENRY

20

and DANIEL HENRY, wife and husband, with two minor children K.H. and B.H., Plaintiff's.

21

Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with

22

this Summons.

23

24

| SUMMONS - 1 | SWEETSER LAW OFFICE, PLLC |
|---|---|
| | 1020 N. Washington |
| | Spokane, WA 99201 |
| | 509-328-0678 |

In order to defend against the lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the Plaintiffs within 20 days after the service of this Summons, **or within 60 days if this Summons was served outside the State of Washington**, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the Plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiffs file the lawsuit with the court. If you do so, the demand must be in writing and must be served upon the Plaintiffs. Within 14 days after the service of the demand, the Plaintiffs must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is stated pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED at Spokane, Washington, this _____ 8th _____ day of February, 2022.

SWEETSER LAW OFFICE, PLLC

JAMES R. SWEETSER, WSBA No. 14641
MARCUS SWEETSER, WSBA No. 52895
ISAIAH T. PETERSON, WSBA No. 49794
MARSHALL CASEY, WSBA No. 42552
Attorneys for Plaintiffs
1020 N. Washington
Spokane, WA 99201
Tele No: 509-328-0678
Fax No: 509-326-2932

| SUMMONS - 2 | SWEETSER LAW OFFICE, PLLC |
| --- | --- |
| | 1020 N. Washington |
| | Spokane, WA 99201 |
| | 509-328-0678 |

1

2

3

4

5

6

7              SUPERIOR COURT OF WASHINGTON FOR SPOKANE COUNTY

8    ERIKA HENRY and DANIEL HENRY, wife
     and husband, with two minor children K.H.              CASE NO: 22200401-32
9    and B.H.

10                                                          **COMPLAINT FOR DAMAGES
                                        Plaintiffs,         AND INJUNCTIVE RELIEF**
11
     vs.
12
     WASHINGTON DEPARTMENT OF
13   HEALTH, their officers, agents, or assigns;
     UMAIR A. SHAH, JESSICA TODORVICH,
14   ROY CALICA, and JOHN DOES 1-10.

15                                     Defendants.

16

17        COME NOW the Plaintiffs, Erika Henry and her family, *et. al.*, by and through their

18   attorneys of record at SWEETSER LAW OFFICE, as follows:

19                    **I.   PARTIES, JURISDICTION, AND VENUE**

20   1.1  The state superior court has jurisdiction and venue over this matter per RCW 4.92.010.

21   1.2  Venue is proper per RCW 4.92.010 and RCW 40.12.020 in Spokane County. It is the

22        county of residence for the Plaintiffs, and is where the cause of action or substantial parts

23        thereof arose.

24

25
     **COMPLAINT FOR WRONGFUL                    SWEETSER LAW OFFICE, PLLC**
     **TERMINATION - 1**                         1020 N. Washington
                                                 Spokane, WA 99201
                                                 509-328-0678

1.3  WASHINGTON STATE is a sovereign state, organized under the Constitution of Washington and the Constitution of the United States of America.  The State has waived claims to sovereign immunity.

1.4  Defendant WASHINGTON DEPARTMENT OF HEALTH is a department organized by the state government and created to "give expression to the needs of individual citizens and local communities as they seek to preserve the public health." The Department is authorized to be sued in such corporate capacity for its wrongful conduct, acts, errors and omissions and the wrongful conduct, acts, errors and omissions of its Secretary and other agents.

1.5  Defendant UMAIR A SHAH was and is the Secretary of Health for the State of Washington.  He was employed by and the person in charge of the Department of Health and, upon information and belief, was a person responsible for the adverse employment actions at issue in this matter.

1.6  Defendant JESSICA TODOROVICH was and is the Chief of Staff for the Department of Health.  She was employed by and a person within the Department of Health with authority to direct adverse employment actions and, upon information and belief, was a person responsible for the adverse employment actions at issue in this matter.

1.7  Defendant ROY CALICA was and is a Human Resources Consultant for the Washington State Department of Health.  He was employed with the Department beginning in July 2020, with the responsibility to perform fair and impartial investigations applying the Department's policies uniformly.  Calica had authority to investigate for the purpose of

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 2**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

1    taking adverse employment actions and, upon information and belief, was a person

2    responsible for the adverse employment actions at issue in this matter.

3  1.8  Plaintiffs ERIKA HENRY, and her family, are residents of Spokane County, Washington.

4    At all times material hereto, Erika Henry was a resident of Spokane County and a citizen

5    of Washington State.

6  1.9  On or about October 5, 2021, pursuant to RCW 4.96.020, plaintiffs filed a notice of tort

7    action for damages sustained by Plaintiffs as a result of the matters alleged herein.

8  1.10 Plaintiffs have satisfied the prerequisites to maintain this action per Wash. Rev. Code §

9    4.96.020.

10  1.11 Defendants had sixty days to allow or deny Plaintiffs claims and failed to respond.

11  1.12 At all times material hereto, defendant JOHN/JANE DOE, were agents employed at or by

12    one or more of the Defendants with responsibility for the wrongful conduct, acts,

13    omissions and errors complained of herein, or other persons with liability for the acts or

14    omissions giving rise to this complaint.

15  1.13 Erin Eychaner, HR Operations Manager, while not listed as a Defendant in her individual

16    capacity, is a person who upon information and belief participated in and has material

17    knowledge regarding the facts and circumstances giving rise to this complaint.

18  1.14 Gil Hodgson, Labor and Personnel Attorney, while not listed as a Defendant in his

19    individual capacity, is a person who upon information and belief participated in and has

20    material knowledge regarding the facts and circumstances giving rise to this complaint.

**COMPLAINT FOR WRONGFUL
TERMINATION - 3**

1.15 Annie Manning, Labor and Personnel Division, while not listed as a Defendant in her individual capacity, is a person who upon information and belief participated in and has material knowledge regarding the facts and circumstances giving rise to this complaint.

1.16 Robert Detamore, Labor Relations Manager, while not listed as a Defendant in his individual capacity, is a person who upon information and belief participated in and has material knowledge regarding the facts and circumstances giving rise to this complaint.

## II.    FACTS

### Spokane's Local Health Board, Health Officer, and Administrator.

2.1 Spokane's local health board (SRHD) was at all times material hereto made up of: three (3) Spokane County Commissioners; three (3) elected officials of Spokane, Washington; two (2) elected offices from the city of Spokane Valley; one (1) elected official acting as a representative from the remaining incorporated cities and towns in the District; and three (3) at-large citizen members appointed by the Board of County Commissions of Spokane County.[1]

2.2 Spokane's local health board is organized, as one of its primary purposes, "to make possible and invite the active participation of all professions, persons and organizations interested in public health."

2.3 Spokane's local health board bylaws provide at Article IV, Section 3 that the local health board "shall approve the appointment and termination of a District Health Officer."

---

[1] Membership on local health boards will change effective July 1, 2022. See ENGROSSED SECOND SUBSTITUTE HOUSE BILL 1152.

**COMPLAINT FOR WRONGFUL TERMINATION - 4**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.4  State law provides "the local health officer shall not be removed until after notice is given, and an opportunity for a hearing before the board" as to the reason for removal. RCW 70.05.050.

2.5  Spokane's local Health Officer (LHO) is the official vetted and qualified as the "experienced physician … in accordance with the standards prescribed in RCW 70.05.051 through 70.05.055 to hold the office of local health officer" with the qualifications and the duty to report "contagious or infectious diseases" to state agencies and to inform the public. RCW 70.05.050.

2.6  Spokane's local Health Officer is required by state law to "take such action as is necessary to maintain health and sanitation," and to "control and prevent the spread of any dangerous, contagious or infectious diseases," and to "inform the public as to the causes, nature, and prevention of disease." RCW 70.05.070.

2.7  By contrast, Spokane's local Administrative Officer (AO) is not vetted and qualified in accordance with state law, serves at the pleasure of the local health board and is responsible for "administering the operations of the board including such other administrative duties required by the local health board, *except for duties assigned to the health officer as enumerated in RCW 70.05.070*." RCW 70.05.045 (emphasis added).

2.8  On February 22, 2018, Spokane's local health board revised its bylaws which provide, at Article VI, that the Health Officer "shall perform such duties as provided by law" citing to RCW 70.05.070, adding in ultra vires that the Health Officer both "reports" and "shall be responsible to the Administrator for his/her actions."  The bylaws contain no further directions, clarifications or instructions concerning how the AO is to monitor, supervise or

**COMPLAINT FOR WRONGFUL TERMINATION - 5**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

interact with the LHO. Nor do the bylaws address the interaction between the LHO's statutory public health duties and the supervisory authority granted to the AO.

2.9  Spokane's local health board bylaws did not require that anyone with medical or public health experience must be on the Board, despite one of its primary purposes being to "to create and promote prudent public health policy within the Spokane area health district."

**Public Outcry Over the Firing of Dr. Lutz by Administrator Amelia Clark.**

2.10 In August 2019, Amelia Clark was hired by Spokane's local health board to act as the AO.

2.11 Amelia Clark began her appointment as the Administrative Officer on September 16, 2019.

2.12 In February 2020, the nation was hit with the first wave of the COVID-19 pandemic. Washington was the first state to have a recorded case of COVID-19, and the Spokane area was front and center in the battle when on February 24, 2020, four passengers from a Princess Cruise were transferred to the Sacred Heart Special Pathogens Unit under federal isolation.

2.13 A few days later, on February 29, 2020, Gov. Jay Inslee declared a statewide emergency due to the spread of coronavirus (COVID-19).

2.14 During the global pandemic, on or before June 2020, Clark became despondent about Dr. Lutz due to, among other items, his attendance at a May 31 protest against police brutality in Spokane, a purchase of thermometers for a homeless shelter that was approved by Lutz (Clark felt the Salvation Army should meet the need), because Lutz would not sign an agreement requiring preapproval from Clark to send external communications as the

Health Officer, for questioning the reporting structure outlined in the bylaws versus the

state law, and because Lutz was not ending school closures as quickly as Clark wanted.

2.15 Clark told Dr. Lutz "the Board" was not happy with his participation in the May 31 march.

2.16 Of note, then Secretary of Health John Wiesman issued a statement regarding the public

marches that occurred after the killing of George Floyd:

> *"While more recently, we have taken intentional action to address the root causes of health inequities, including structural racism and other forms of oppression, there is still a lot of work to do," Wiesman said in a media statement. "Public health must continue to respond and lead with racial equity and social justice. Racism is a public health threat that can't be ignored. And leading with racial equity and social justice requires us to prioritize the health and well-being of historically marginalized and oppressed communities — including Black, Indigenous and People of Color, individuals with disabilities and the LGBTQ+ community, to name a few."*

2.17 In early June 2020, Clark went directly to then Secretary of Health Wiesman to complain

about Dr. Lutz.

2.18 Dr. Lutz internally requested a third-party mediator facilitate a meeting in June of 2020,

which did not occur.

2.19 Clark prepared a draft improvement plan/performance review of Dr. Lutz and circulated it

to Ben Wick and Mary Kuney on June 23, 2020 and updated it on June 25, 2020.

2.20 On August 3, 2020, Dr. Lutz, based on State DOH guidelines, recommended that area

schools begin their 2020-2021 academic year remotely.

2.21 On October 14, 2020, just two weeks before he was fired, Dr. Lutz made statements to the

press about the possible need to move back a phase due to recent COVID-19 data:

> *"The data are not going in the right direction," Lutz said. "We are seeing an increase in cases throughout the county from multiple sources which tells me people are not distancing, not wearing masks when they should, getting together when they shouldn't, and not taking the threat of COVID-19 seriously."*

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 7**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

1

2.22 On October 29, 2020, two weeks after stating he may need to move Spokane back to

2

3       Phase 2, Clark discussed her desire to discipline Dr. Lutz during an executive session. No

4       votes were taken by the Board during executive session.

5

2.23 The minutes of the October 29, 2020 local health board meeting do not reflect any action

6       being taken with respect to Dr. Lutz's position as the Public Health Officer. The minutes

7       of the October 29, 2020 executive session state: "No action was taken."

8

2.24 Spokane City Council President Beggs said the local health board had left executive

9       session on October 29, 2020 with the understanding that Dr. Lutz would not be fired.

10

2.25 Beggs stated that at no time was he ever aware of the local health board approving

11      removal or approving any severance agreement during the meeting on October 29, 2020.

12

2.26 Beggs stated the local health board did not authorize or direct Dr. Lutz's identification,

13      keys, cell phone, and laptop be taken, or the disabling of Lutz's access to his email or

14      remotely wiping his cell phone during the meeting on October 29, 2020.

15

2.27 Clark did not have the local health board's authority to fire Dr. Lutz on October 29, 2020.

16

2.28 Spokane's local health board had not reviewed or approved the separation agreement

17      Clark gave to Lutz when giving him the option to resign or be fired. Clark believed she

18      was "the leader and administrator of the Health District and all employees report to her."

19

2.29 On October 29, 2020, without first getting authorization from the local health board, Clark

20      fired Dr. Lutz. Clark also told Lutz she would give him an opportunity to resign in lieu of

21      termination if he did so by 4:00 pm the next day.

22

2.30 Dr. Lutz described his firing as follows:

23

24

25

**COMPLAINT FOR WRONGFUL**          **SWEETSER LAW OFFICE, PLLC**
**TERMINATION - 8**                 1020 N. Washington
                                    Spokane, WA 99201
                                    509-328-0678

*Amelia Clark fired me last Thursday. She told me in a meeting late Thursday afternoon [October 29] that I was terminated 'effective immediately,' requested my SRHD identification, keys, cell phone and laptop, and told me I could contact HR to retrieve my personal items. She also provided me with a written severance offer, stating that I had until the next day (Friday) at 4:00 p.m. to resign and sign the agreement*

*...*

*Ms. Clark was at her desk and Mayor Wick [Chair of the local health board] was at one end of the conference table and Dr. Lutz was at the other end. There were initial greetings and then Ms. Clark made a comment about the humanitarian award Dr. Lutz had received the day before and then referenced that in her opinion, homelessness was not a priority of the Public Health Officer. He told her he believed contrary to that, that he had a responsibility to the whole population, including those that are homeless. Then she discussed other things that she found fault with and said, "You're terminated, effective immediately." It took him by surprise, and he tried to respond. She said, "Effective immediately." She said, "Here's a severance package" and he said that he would take it to read it. She said that it needed to be on her desk at 4:00 p.m. on Friday. She said, "You need to leave all your office items here," referring to his key and computer and cell phone and badges, and that he would have to contact HR to get the rest of his belongings, to get his office cleared out.*

*At that point, Mayor Wick escorted Dr. Lutz back to his office. Dr. Lutz asked to say goodbye to his administrative assistant, which Mayor Wick allowed him to do, then they escorted him downstairs and out of the building. The only thing he left with was a severance package.*

2.31 The Separation Agreement given to Dr. Lutz by Clark read, in part: "Employee was separated from employment effective October 29, 2020." The Separation Agreement PDF was titled: "Draft BL Separation Agreement.102520.pdf," indicating that it was prepared on October 25, 2020.

2.32 Clark did not tell Dr. Lutz he was being placed on administrative leave, nor did she request that he be placed on administrative leave on October 29, 2020.

2.33 Dr. Lutz was not given notice and an opportunity for a hearing before the local health board as to the reason for his removal prior to or during Clark's and Wick's October 29th meeting with him.

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 9**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.34 At the end of the October 29, 2020 meeting between Clark and Dr. Lutz, Wick escorted Lutz out of the building.

2.35 On October 29, 2020, at or around 5:00 p.m., Lyndia Wilson, Division Director of the local health board's Preventive Public Health Division, was called into Clark's office. She was told that Clark had decided to let Dr. Lutz go. Wilson asked why, and Clark said that she couldn't work with him any longer and that there were trust issues.

2.36 At 5:35 pm on October 29, 2020, Clark called SRHD Program Manager Todd Miller and directed that he begin Dr. Lutz's termination procedure. Miller's notes state: "Phone call from Amelia at 5:35pm, Request to begin termination procedure on Blutz [sic] account."

2.37 At 5:40 p.m. on October 29, 2020, Beggs received an unexpected email from an attorney notifying him Dr. Lutz was terminated. The email stated: "Please be advised that Amelia has terminated Dr. Lutz's employment." Beggs then called Clark who told him that she had terminated Lutz at a meeting that afternoon. Clark told Beggs that she gave Lutz the right to convert his termination to a resignation in lieu of termination if he gave her notice of his resignation the next day.

2.38 At 5:45 pm on October 29, 2020, Program Manager Todd Miller sent an email to Clark detailing the steps taken to disable Dr. Lutz's access to email accounts and remote wipe his cell phone.

2.39 On October 30, 2020, at 7:47 a.m., an email was sent by Clark to over 300 local health board employees which said, in part: "Yesterday, October 29 was Bob Lutz's last day."

2.40 The local health department's Human Resources Manager, Sue Winters, had not been asked to place Dr. Lutz on paid administrative leave when she received Clark's email

**COMPLAINT FOR WRONGFUL
TERMINATION - 10**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

stating "October 29 was Bob Lutz's last day," which made her suspect "more going on that HR was not involved with."

2.41 Throughout the morning, news reports surfaced about the "mysterious" "stunning" "unusual" "drastic" and "sudden" firing of Dr. Lutz.

2.42 Employees at the local health department were "shocked and devastated," an employee was quoted as saying, "This caught everybody by surprise." Multiple employees at the local health department who worked closely with Dr. Lutz throughout the COVID-19 pandemic were reportedly questioning if the decision was politically motivated.

2.43 Spokane City Councilmember Betsy Wilkerson and member of the local health board said she was "disturbed" by what happened noting the board must vote on the appointment and termination of health officers.

2.44 Local health care providers, the fire department, local university professors, the Washington State Medical Association, school districts, business owners, and executives statewide expressed concerns that day and in the following several days, about the removal of the Public Health Officer in the midst of an escalating pandemic.

2.45 Local ethicists called for the local health board to be transparent about the "personnel issues" that led to Dr. Lutz's firing.

2.46 Questions quickly surfaced in the media about whether Lutz's firing was "politically motivated" by a desire to enter Phase 3 or reopen schools and businesses faster.

2.47 Prior to his removal, Dr. Lutz had been discussing whether to bring back restrictions as the number of cases in pockets of the community had been spiking.

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 11**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.48 Dr. Lutz was removed on the same week that COVID-19 hospitalizations were the second-highest they had been in the Inland Northwest.

2.49 "This is dangerous; people will die because of this," the Spokesman Review article concluded about Dr. Lutz removal.

2.50 Spokane Mayor Woodward spoke out following Dr. Lutz removal stating: "remain resilient and practice good mask etiquette and hand hygiene."

2.51 On October 30, 2020, at approximately 9 a.m., a press release was issued by the SRHD stating, in part: "Yesterday, the Spokane County Board of Health asked Spokane County Health Officer Dr. Bob Lutz to resign, effective Oct. 30, 2020. The decision was made during the executive session of the Board's regular monthly meeting."

2.52 Within five minutes of sending the October 30, 2020 press release, board member Wick sent Clark an email saying, "Give me a call when you get a chance." Board member Kevin Freemen sent an email emphasizing: "Did Amelia TERMINATE Bob, or was it something else?"

2.53 On October 30, 2020 at 10:34 am, Beggs sent an email stating: "This release saying that the board agreed to terminate Dr. Lutz during executive session seems problematic on several levels." Beggs noted it would be illegal under the Open Public Meetings Act and the local health board's bylaws to make a firing decision during an executive session, which again, the board never did. Clark responded to Beggs by email within less than 30 seconds stating, "This will be corrected during the press conference."

2.54 In what was described as a turbulent news conference on October 30, 2020, Clark spoke on behalf of the local health board:

**COMPLAINT FOR WRONGFUL TERMINATION - 12**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

*13:45*
*Reporter: This is Sam Wohlfeil with the Inlander. Um, can you please clarify, you said effective yesterday, was that effective yesterday that you were asking Dr. Lutz to resign or his actual termination was effective with the Board of Health vote at that time?*

*Ms. Clark: Um, so again, the Board of Health did not vote on that. Um, it was from a discussion had during the uh, executive session.*

*Reporter: So is he officially no longer an employee or what is the official status of him today?*

*Ms. Clark: So again, um, you know this is a personnel issue, so I cannot go into detail.*

*22:10*
*Reporter: Isn't it procedural? How is that a personnel matter?*

*Ms. Clark: So, um, the proce... eh, if you're asking about the process I can, I can talk about that. Um, so, our bylaws do indicate that, um, you know in this case so for example of the Health Officer, the Supervisor, who is me, the Administrative Officer, um, I have to um, to seek, uh, the Board's support in this, and um, that is what I did yester... yesterday.*

*26:28*
*Reporter: Uh, so from my understanding, to remove him from his role there would have had to been a vote taken place by the Board in a public session, not executive. Is that wrong?*

*Ms. Clark: I'm going to have Ben Wick, um, assist with that.*

> *Mayor Wick: Um, our, our bylaws actually say that it, um, if the Board of Health has to, um, um, app... approve or concur with the, the executive director or Administrative Officer's decision.*

*Reporter: So the board and the administrator Amelia Clark all approved the, resignation of Dr. Bob Lutz?*

*Ms. Clark: Yes, I you know I took my action um, yesterday with the full support of the Board.*

*Reporter: And so they did this, sorry this is Rebecca with The Spokesman again, so this decision which is an action, did happen in a meeting that was not open to the public, so an executive session?*

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 13**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

*Ms. Clark: No, no. During the executive session I brought forth my concerns, and again, like as, uh, Chair Wick was si... stating um, I don't, it doesn't take a vote in this situation.*

2.55 After Clark made the above statements, SRHD's public information officer, Kelli

Hawkins, made statements at the end of the news conference:

*29:47*
*Reporter: Several people still have questions... [Broadcaster starts talking over end of conference.]*

*31:54*
*Ms. Hawkins: That has not happened at this time.*

*Reporter: Is that going to happen if he doesn't resign?*

*Ms. Hawkins: That is future decisions to be made and also something that needs to be discussed within personnel.*

*32:10*
*Reporter: Ok, if he is terminated, is that an action that you think has to happen in public?*

*Ms. Hawkins: I cannot discuss that at this time. I am sorry you guys, I just if, please if, please send me your questions, I'm...*

*Reporter: Kelli, this... nobody understands what's happened. I, I don't mean to speak for everybody but...*

*Ms. Hawkins: I unders...*

*Reporter: ... he was asked to resign, we don't know if he resigned. We don't know if he's terminated, but we don't have a Health Officer. This is public information! This is basic!*

*Ms. Hawkins: Yes, and so we're explaining where we are at right now and we will make sure you are updated as soon as we have more information.*

*Reporter: Is that later today? What does that mean?*

*Ms. Hawkins: Thank you, I have to hang up the press conference right now you guys.*

*Reporter: What time can we expect this?*

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 14**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

*Reporter: Yeah, will you have another press conference later today?*

*Ms. Hawkins: I will, let you know as soon as I know more. Thank you.*

2.56 During the news conference, Mr. Beggs had the following text exchange with John Sklut:

> *[Mr. Sklut]: ... On behalf of Gonzaga University, I would like to share some thoughts on our positive working relationship with Dr. Bob Lutz ...*
>
> *[Mr. Beggs]: ... I am listening to the press conference right now and they are incorrectly stating that it was the health board who made the decision. I am a big supporter of Dr. Lutz's work and will keep you posted on how best for you to share your university's response once I know more.*

2.57 Despite several requests from the local media following the October 30, 2020 news conference, neither Clark nor Spokane's local health board would clarify who was currently acting as Spokane's Public Health Officer.

2.58 Without an acting local health officer, the Spokane community lacked a physician with the legal authority to issue orders for the multitude of public health programs, mitigation efforts, treatment and interventions to respond to the COVID pandemic.  Without a local health officer, the daily public health business for is detrimentally impacted because it is the local health officer that is authorizes to permit public health programs to legally operate.

2.59 Without an acting local health officer, the Spokane community was placed at risk during a global pandemic.

2.60 Mayor of Millwood Kevin Freeman said he stood by Dr. Lutz and his actions during the pandemic, but also said if Clark proves that Lutz is "detrimental" that he would vote to approve Lutz's termination.

**COMPLAINT FOR WRONGFUL TERMINATION - 15**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.61 After the removal of Lutz was made public, hundreds of people throughout the Spokane community gathered outside Spokane's local health board to protest Dr. Lutz's removal.

2.62 The protest was organized by a former SRHD employee, Chandra Richardson. "Let the city, county, and state know that Dr. Lutz is a vital part of our community and we won't tolerate any type of political antics to have him removed," the protest description read on social media. "This, to inform the Board of Health and the City Council that Dr. Lutz's forced resignation is not acceptable to the community in which he serves."

2.63 Protestors "feared the county will try to reopen too quickly if Lutz is terminated," reported Krem 2 news. "I want to go back to school, but I want to do it the right way without sacrificing any lives. Bob Lutz is the way to do that. He's the one here fighting for us," explained a protesting high school sophomore.

2.64 Thousands of pages of messages criticizing Clark and voicing support for Dr. Lutz were received by board members from many areas, including:

- Multiple area health professionals
- The Public Health Officer for Stevens and Ferry counties, Dr. Sam Artzis
- YMCA of the Inland Northwest
- YWCA of Spokane
- Monika Lawrence, Mayor of Clarkston, on behalf of the Asotin County Health Board
- Asotin County Public Health
- NATIVE Project
- Pacific Islander Community Association
- Spokane Public Schools Board member Nikki Lockwood
- Dr. Kylie Klingsbury, SRHD Homeless Outreach Coordinator
- Barry Barfield, Administrator of the Spokane Homeless Coalition
- Reverend Dr. Todd F. Eklof, Unitarian Universalist Church of Spokane
- Amber Lenhart, SRHD Policy Lead

COMPLAINT FOR WRONGFUL
TERMINATION - 16

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.65 A petition calling for the removal of Clark gained tens of thousands of signatures on the website www.change.org overnight. The petition accused Clark of "recklessly abusing her power in calling for the resignation of the County's Public Health Officer amidst the current pandemic."

2.66 The next day, on October 31, 2020, Beggs released a statement which stated, in part:

> *"The Spokane County Health District By-Laws provide at Article IV, Section 3 that: 'The Board of Health shall approve the appointment and termination of a District Health Officer.' To my knowledge, the Spokane County Health District Board has not taken any action to approve the termination of Dr. Lutz. In order to do so, the Board would have to vote at a meeting that was properly noticed and open to the public, subject to the Governor's orders on open public meetings.*
>
> *I have greatly appreciated the leadership and the work of the entire staff of the Health District, including Dr. Lutz, in supporting Spokane through this pandemic. We would be in a much worse situation without their work, and I understand the deep community concern at this turn of events. I join those requesting prompt answers to how the District will fill the duties of those unique tasks granted only to an authorized local public health officer."*

2.67 After issues regarding the legality of Clark's actions were raised, Clark claimed that she did not think she said anything that would cause Dr. Lutz to believe he was terminated in their meeting on October 29, 2020.

2.68 On October 31, 2020, the SRHD's public information officer, Hawkins, issued a press release on behalf apologizing on behalf of the local health board for stating that "a vote had been taken during executive session" and for providing "incomplete information" in the October 30, 2020 press release and during the press conference.

2.69 Hawkins' October 31, 2020 press release explained Spokane's local health board would be scheduling a vote on Dr. Lutz's removal consistent with their bylaws and Washington State law, and would provide 24-hours' notice to the public for written comment to the

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 17**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

local health board members prior to the meeting. *See* RCW 70.05.050; 70.05.120;

Chapter 42.30 RCW; RCW 42.30.080; RCW 42.30.110.

2.70  On October 31, 2020, Spokane City Council President Beggs sent emails to stakeholders

to facilitate public comments on the issue, including:

*"I share your interest in this very concerning development in the middle of a pandemic response. Given the potential for litigation and the requests by the Health District attorneys, I am not commenting further than the statement I issued Friday evening which I have copied below. Please continue to express your desire for the best public health possible, including independent medical opinions and statements from public health professionals. I look forward to commenting more specifically at the upcoming public meeting that the Health District Board will be having on this topic."*

*On October 31, 2020, Dr. Lutz also issued a statement to media outlets stating:*

*"I maintain a strong desire to continue working to promote the health and safety of the citizens of Spokane County and this region. The manner, timing, and motivation underlying the request I resign is troubling…"*

2.71  On November 1, 2020, Mayor Freeman emailed a statement to the Administrative Officer

and the media stating:

*"I have received hundreds of emails from citizens, institutions, and agencies requesting clarity and transparency in this matter. There will be a special meeting of the Board where the SRHD Administrative Officer will present her request to terminate Dr. Lutz from his position as Health Officer. Dr. Lutz will have an opportunity to respond, and the Board will decide to approve or deny her request. The meeting will occur in the very near future, at a date and time yet to be determined by the Board. Due to COVID-19 social distancing guidelines, that will be a virtual meeting. Public notice will be provided prior to the meeting, and the public will be able to view the meeting as it happens.*

*If the Administrative Officer presents sufficient information during the hearing showing that Dr. Lutz's continued employment as Heath Officer is detrimental to the Spokane Regional Health District, I will vote for his termination."*

2.72  On November 2, 2020, Beggs emailed a statement to City of Spokane Communications

Director Lisa Gardner and others that he described as ready to publish:

**COMPLAINT FOR WRONGFUL
TERMINATION - 18**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

*"I am grateful that the Spokane Regional Health District issued a statement on Saturday correcting the inaccurate information from its Friday media release and press conference. Despite several requests, the District has still not clarified who is currently acting as Spokane's Local Health Officer.*

*1. Pursuant to RCW 70.05.050: "...the local health officer shall not be removed until after notice is given and an opportunity for a hearing before the board or official responsible for his or her appointment under this section as to the reason for his or her removal." Spokane's by-laws provide that the local health officer may only be appointed or removed by formal action by the Board of Health. Many read that to mean that Dr. Lutz remains employed by the SRHD as Spokane's Local Health Officer, and if so, I hope that he will continue acting as the Health Officer until such time as the Board considers and makes a formal decision on the issue of removal.*

*2. RCW 70.05.120 sets out serious consequences for any violation of the law set out above. See a copy of those consequences pasted in below. Spokane's Board of Health needs to investigate and remedy any potential violations of state law that interfered with our local health officer's performance of his duties over the past few days and in the future until there is official board action on the issue of removal.*

*3. The Board of Health appears to be the exclusive appointing and removal authority for both the Health Administrator and the Health Officer. A few years ago, the Board changed its governance to have the Health Officer take direction from and report to the Health Administrator. If they disagree with each other on either's performance that would undermine the District or public health, the Board is the final authority. I share the requests of the community to have that open public meeting as soon as possible, where each can present their version of events and opinions so that the Board can restore order and credibility at the Health District.*

*4. In the future I believe it will be helpful if the Board creates a more specific description of the lanes of independent authority for both the Health Administrator and the Health Officer, as well as an alternative method of dispute resolution if they see things differently from each other."*

2.73 On November 2, 2020, the City of Spokane sent out a press release that included a statement from local health board member Karen Stratton stating:

*"As a member of the board, I can confirm that no formal vote was taken on any matter. In fact, any vote would have violated state law, as the board was in executive session, and formal actions or votes are not permitted in executive session under the Open Meetings Act."*

**COMPLAINT FOR WRONGFUL TERMINATION - 19**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

On November 2, 2020, Mayor Freeman texted Mayor Wick asking:

*"Is the [] statement from Dr. Lutz true? At the meeting, did Amelia fire him directly at the meeting, or did she ask him to submit his resignation? If his statement is inaccurate, you need to respond ..."*

2.74 On November 2, 2020, Clark directed Human Resources Manager, Sue Winters, to pre-date Dr. Lutz's administrative leave to October 30, 2020.

2.75 On November 3, 2020 citizen complaints were received against Clark, one from former Spokane City Counsil President Ben Stuckart, and one from Maria Howard, PhD co-signed by an additional 162 individuals including four doctors.  The complaints specifically alleged that Clark failed to "terminate the local health officer in accordance with RCW 70.05.050" (the local health officer shall not be removed until after notice is given, and an opportunity for a hearing before the board).

2.76 On November 3, 2020, Clark sent an email directed to Dr. Lutz stating:

*"As you know, I have asked the Board of Health ("BOH") to approve my decision to terminate your employment as SRHD Health Officer based on the conduct set forth below. Although you report to me as the Administrator, the SRHD BOH Bylaws provide that the Board must approve the decision to terminate the Health Officer.*

*The Board of Health will hold a public meeting on November 5, 2020 at 3:00 p.m. I will have 30 minutes to present the reasons for my decision to the Board and then you will have 30 minutes to present your response. The Board will then have the opportunity to ask questions of either or both of us. I will not be allowed to ask questions of you or the Board, and you will not be allowed to ask questions of me or the Board. Neither party will be allowed to call witnesses. The Board intends to hear both presentations in open public session."*

2.77 The PROTEC17 Union, which represents SRHD employees, officially held and passed a vote of no confidence against Clark over her handling of Dr. Lutz's termination. The union also called for termination of Clark's employment and for Lutz to continue as

**COMPLAINT FOR WRONGFUL
TERMINATION - 20**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

1    health officer. Many union members were also quoted as being shocked at the news and

2    said it was "dishonest."

3    2.78    Seventeen Spokane County school superintendents submitted a statement in support of

4    Dr. Lutz stating, in part: "Decisions that have been made have not been easy or

5    uncomplicated for any of us nor for Dr. Lutz and other public health professionals. Yet

6    he has leaned in with us and collaborated as we have strived to make the best decisions

7    possible for our students and district communities and for the larger regional community

8    we share. We have each appreciated the thoughtful guidance and generous time Dr. Bob

9    Lutz and others on regional health district have provided throughout the ongoing

10    pandemic."

11

12    2.79    More than thirty-three faculty members of the Gonzaga University Department of

13    Chemistry & Biochemistry, Biology and Physics signed a letter in support of Dr. Lutz

14    and asked "that the Spokane Regional Health District reconsider their decision to force

15    his resignation."

16    2.80    Protesters gathered outside the SRHD building ahead of the local health board's

17    November 5, 2020 meeting. One demonstrator held a sign with the message, "Amelia

18    quit trying to kill us! Fire Amelia! We trust Dr. Lutz." She said into a bullhorn, "Don't

19    play games with our lives."

20

21    2.81    During the local health board meeting on November 5, 2020, City Council President

22    Beggs said to members of the public who have reached out to him: "We hear you. We

23    understand that you are concerned about the health of [this] community and you care

24    very little about the communications that are going on within an agency."

25

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 21**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.82 During the local health board meeting on November 5, 2020, Beggs also questioned

Clark on whether a termination had occurred without board approval, including the

following exchange:

*1:25:25*
*Mr. Beggs: I guess my question was, he, Dr. Lutz was no longer acting as the health officer after your meeting with him Thursday. Is that fair to say?*

*Ms. Clark: Yes. Um, I, I would say that.*

2.83 On November 5, 2020, Spokane's local health board voted to remove Dr. Lutz by a vote

of 8 Yeas and 4 Nays.

2.84 Freeman, who voted to remove Dr. Lutz, blamed the local health board for not finding a

way for Clark and Lutz to work together.  Freeman also stated Lutz's attendance at a

May 31 protest against police brutality was hypocritical.

2.85 Following the vote of removal, Dr. Lutz attorney issued a statement reading, in part:

"Dr. Lutz believes his termination was without reasonable cause and was politically

motivated in retaliation for unpopular Covid-19 decisions he made this year... Dr. Lutz

is greatly appreciative of the overwhelming support he has received from both the public

and his employees."

2.86 Beggs, who voted against Dr. Lutz's removal, issued a public statement: "My vote

tonight to keep Dr. Lutz in his position as our Health Officer was based on the answer to

a simple question- what would keep Spokane safer and healthier? I have seen first-hand

the hard work that both Dr. Lutz and Amelia Clark have put into the SRHD, especially

since March. Dr. Lutz has been the face of public health in our community during these

difficult months and I do not believe that a difficult relationship between two individuals

**COMPLAINT FOR WRONGFUL
TERMINATION - 22**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

1    within the SRHD should put the health of our greater community at risk. I do not agree

2    with the process that was undertaken to terminate Dr. Lutz, and I will work hard to

3    update our procedures to make sure that the Health Officer can always speak the medical

4    truth to our community."

2.87    Stratton, who voted against Dr. Lutz's removal, issued a public statement: "It feels like

two people that were doing the best job they know how and who were both committed

and compassionate about their community, yet it just didn't work out. We owe it to our

community to always put their health and well-being first, and as a Board member that is

my commitment, to consider the safety of Spokane."

2.88    Wilkerson, who voted against Dr. Lutz's removal, issued a public statement: "Despite

the internal differences, the community wants and needs to feel safe. My vote to keep

Dr. Lutz was rooted in being a voice for our community to continue the uninterrupted

path in keeping Spokane safe. As we approach future uncertainty of a global pandemic, I

will commit to ensure that the Board has defined and transparent processes going

forward."

2.89    Human Resources Manager, Sue Winters, did not put through paid administrative leave

for Dr. Lutz until November 5, providing for paid administrative leave from October

30th through November 5th, with the official last day being November 5th.

2.90    On November 6, 2020, the day after Dr. Lutz was voted out, Spokane County recorded a

new all-time high in covid cases, and several board members publicly expressed concern

with the decision to remove Lutz. The next day Spokane shattered its single-day record,

nearly doubling it, with 347 new covid cases.

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 23**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.91 On November 8, 2020, Washington State Board of Health member Steve Jenkins stated, "It sounds like [Dr. Lutz] was being pressured to change his opinions on some things… There's way more issues of a public nature that might have led up to this, and so I want to make sure that we have someone with a strong public background who understands how local politics plays into this that does an investigation."

2.92 On November 8, 2020, Washington State Secretary of Health Dr. John Wiesman of the Department of Health made a public statement that:

*"I appreciate the passion that folks are coming forward with their concerns. I think it's very distressing and concerning that two professionals are challenged, as they are, at this moment in time during a pandemic when our energies and resources really need to be focused on combatting this virus and continuing to save lives… As the Secretary of Health, in general, I am very concerned at the pressures that administrators, that health officers might receive from communities, from elected officials to whom they report in terms of trying to ask folks to make decisions that aren't necessarily in the best interest of science and that balancing of public policy.*
*…*
*We need to look at the governance structure, and whether we have the right governance structure in place… those things need to be examined. I am concerned about how things have transpired… I think that for the community, it's important to get our best sense of transparency here in terms of what really happened.*
*…*
*The community is obviously very concerned about this and has expressed that. We owe it to our community to do our best to get the facts and to make sure that we have the transparency that is needed."*

2.93 On November 8, 2020, Washington State Board of Health member Vazaskia Crockrell stated, "The voices of the community and the concern there warrants that we do the right thing and elevate the concerns as well. We've all looked through the materials, and there's some concerns with the timeline."

2.94 On November 8, 2020, Washington State Board of Health member Tom Pendergrass, and Director of Medical Education at Seattle Children's Hospital, stated, "The

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 24**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

1    information we have both from the attorney of the administrator and material we have

2    received suggest that the sequence was not followed.  That the termination occurred

3    actually before the board meeting… the other concern we have is the quality of the

4    interim Health Officer."

2.95    From November 9th to 30th, 2020, Spokane Public Schools moved forward with

bringing back elementary-age students to the classroom for in-person teaching.  Dr. Lutz

had publicly questioned whether science supported a safe way to reopen schools prior to

his removal, and people throughout the school district were voicing concerns that

vaccinations were not yet being provided to younger teachers.

2.96    On December 6, 2020, at least seven people on Spokane's Health Advisory Committee

members announced they were resigning over Clark's actions. The resigning members

include: Patricia Butterfield, PhD, Michael Dunn, Ed.D, Cynthia Fitzgerald, PhD, Brian

G. Henning, PhD, Rev. Genavieve Heywood, Petra Hoy, and William Lockwood, MD

FACEP. In their letter of resignation, they stated:

*"We will not be complicit in supporting administrators who have worked to subvert the public's health. We note that as Administrator you have:*

*Undermined the effectiveness of SRHD by demonstrating divisive, unavailable, and incompetent leadership.*

*Subverted the public's health through your unwarranted termination of Dr. Bob Lutz. Dr. Lutz is a knowledgeable public health physician who was responding effectively to the COVID19 epidemic.  His unnecessary termination has resulted in disruptions to public health services and a diminishment of trust within our community.*

*Undervalued the voice of underserved groups in Spokane and undermined our public health inclusivity efforts with Dr. Lutz.  Dr. Lutz had been working with our committee to listen and co-create better health opportunities for underserved and underrepresented persons.*

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 25**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

*Failed to implement an evidence-based response to the pandemic, thus contributing to increases in morbidity, mortality, and unnecessary suffering in our region."*

2.97   Less than a month after Spokane's local board of health voted to remove Dr. Lutz, the Washington State Department of Health created a new position and hired Dr. Lutz as a Medical Advisor for Washington's COVID-19 Response.   The position is remote and Lutz works from Spokane.

2.98   In January 2021, Spokane County reported covid outbreaks hitting homeless shelters over the holidays were largely aided by containment efforts including screening and isolating those presenting to shelters with fever.

2.99   On April 29, 2021, an independent preliminary investigation commissioned by the State Board of Health was released.  It found evidence that Clark broke state law in forcing out Dr. Lutz. It said Lutz was in fact removed as health officer on October 29, without a public hearing and vote.

**Erika Henry's Public Service Career in Healthcare Preparedness and Emergency Response.**

2.100      Erika Henry worked for the state government in October 2020.  She worked for the Department of Health (DOH).

2.101      Erika Henry did not work for Spokane County, Spokane's local health board, or SRHD in October 2020.

2.102      Since 1992, Erika Henry lived in Spokane (since the age of 18) and cares about her community.  She cares about the health and well-being of the people in her community.

COMPLAINT FOR WRONGFUL
TERMINATION - 26

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.103    Erika Henry is a citizen and resident of Spokane County Commission District 2 and Mary Kuney represents that District.

2.104    Erika Henry earned her Bachelor's degree in Organizational Leadership from Gonzaga University in 1999, and earned her Master's degree in Strategic Planning for Critical Infrastructures from the University of Washington in 2007. She has served as a Board Member with Washington Poison Center since 2014.

2.105    Erika Henry is married with two young boys, and is the primary wage-earner of her family.

2.106    Erika Henry was employed by the local Spokane health district from 2010 to 2014 as a Regional Healthcare System Preparedness Coordinator.

2.107    Erika Henry was employed by the Washington Department of Health beginning in or around September 16, 2014 as a Healthcare Preparedness Lead.

2.108    Erika Henry was employed within the Washington Department of Health beginning in or around June 2018 as an Emergency Operations Supervisor.

2.109    Erika Henry was employed within the Washington Department of Health beginning in or around June 2020 as an Acting Assistant Secretary of Emergency Preparedness and Response.

2.110    In October 2020, the Department of Health was led by Secretary Dr. John Wiesman.  Secretary Wiesman was a leader that encouraged free speech of his public employees.

2.111    In October 2020, the Department of Health was not led by State Secretary Dr. Umair A. Shah.

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 27**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

**Erika Henry's October 30, 2020 Email to Spokane's Local Health Board Members.**

2.112    Erika Henry had the courage to speak.

2.113    When Erika Henry learned about the firing of Dr. Lutz by Administrative Officer

Amelia Clark she shared the views of many Spokane citizens that it was wrong.

2.114    Erika Henry believes Clark's decision to fire Dr. Lutz as Spokane's Public

Health Officer was dangerous in the midst of the global pandemic.

2.115    Erika Henry consulted with Department of Health Legislative Advisor and

Policy Analyst, Ron Weaver, and incoming Legislative Advisor and Policy Analyst,

Travis Nichols, whether she was permitted and within her rights to make a comment to

Spokane's local health board in her personal capacity as a citizen. She was informed that

she could make a comment as a private citizen.

2.116    If freedom of speech means anything at all, it means the right to contact the

elected officials that represent you.

2.117    Erika Henry wrote an e-mail during personal time (marked on her Outlook

Calendar), from her home office, using her personal equipment, from her personal gmail

email address.

2.118    On October 30, 2020, at 2:14 p.m., Henry sent the e-mail to the members of the

Board.  It was sent to all the members of the board, including the publicly elected

officials from the Spokane area and her own public official, Mary Kuney.

2.119    Erika Henry's October 30, 2020 e-mail was titled "expect better from BOH."

2.120    Erika Henry's October 30, 2020 e-mail was signed "Erika Henry."

**COMPLAINT FOR WRONGFUL
TERMINATION - 28**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.121     Erika Henry's October 30, 2020 e-mail does not reference her position with the Washington State Department of Health.

2.122     Erika Henry's October 30, 2020 e-mail does not speak of the Washington State Department of Health.

2.123     Erika Henry's October 30, 2020 e-mail does not claim to speak on behalf of the Washington State Department of Health.

2.124     Erika Henry's October 30, 2020 e-mail does not reference being a public health professional.

2.125     Erika Henry's October 30, 2020 e-mail references "our community" multiple times.

2.126     Erika Henry's October 30, 2020 e-mail states that she expects the decision to remove Dr. Lutz will be coming to a "public forum" in the near future and that his firing was "baseless" as it was done with no stated cause in violation of state, local, and administrative law.

2.127     Erika Henry's October 30, 2020 e-mail states that Clark's actions were an abuse of authority to "strong arm" the local health board into "ousting" Dr. Lutz based on "vague claims" of "what... personality conflict?"

2.128     Erika Henry's October 30, 2020 e-mail states her views that administrator Clark's actions and leadership as administrator were grossly "incompetent" "inadequate," "weak," and were "impulsive decisions based on her own ego" that "endangers our public health response and, more egregiously, the actual health of the public."

COMPLAINT FOR WRONGFUL
TERMINATION - 29

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.129    Erika Henry's October 30, 2020 e-mail urged her local health board members

hoping they would "argue loudly" and "continue to do so" in order to "right this wrong"

and that the "community is watching intently."

2.130    On November 5, 2020, Spokane's local health board voted to remove Dr. Lutz

by a vote of 8 Yeas and 4 Nays.

### Secretary Shah's Appointment in December 2020.

2.131    On or about December 21, 2020 Defendant Umair A Shah began as the new

State Secretary of Health for Washington State.

2.132    Dr. Shah had been named by Governor Inslee's office for the appointment as

Washington's new State Secretary of Health on November 17, 2020, planning to come

from Texas where he managed Harris County Public Health for seven years.

2.133    Jessica Todorovich serves as Secretary Shah's chief of staff. Todorovich is

responsible for planning and directing all operation activities for the department. She

also is responsible for the daily operations of the agency. She has been with the

Department of Health since 2012, serving as the HR Director and Deputy Secretary for

Administrative Operations and has worked for the state of Washington for 18 years. She

has her bachelor's degree in Politics from Whitman College and her Masters of Science

in Human Resources from Chapman University in California.

2.134    Since his appointment as the new State Secretary of Health for Washington

State, Defendant Secretary Shah has replaced multiple high-level positions in the

Washington Department of Health with personnel from his previous post in Harris

County, Texas.

**COMPLAINT FOR WRONGFUL
TERMINATION - 30**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

1          **Secretary Shah's May 2021 Firing of Erika Henry.**

2    2.135        Defendant Secretary Shah decided to specially visit SRHD on February 8, 2021.

3    2.136        Defendant Todorovich told Henry to accompany Defendant Secretary Shah on

4          his visit to speak with Spokane's local health board and SRHD on February 8, 2021.

5    2.137        Henry met Defendant Shah on February 8, 2021.

6    2.138        Henry brought Defendant Shah granola bars and an apple knowing he had been

7          traveling since early that morning from Texas to visit Spokane.

8    2.139        When Henry and Defendant Shah arrived for the February 8, 2021 meeting,

9          administrator Clark made a comment to the effect of: "We didn't know YOU were

10         coming. We had to rush to make arrangements."

11   2.140        At the February 8, 2021 meeting people began introducing themselves.  When

12         Ms. Henry introduced herself, elected official who voted to remove Dr. Lutz, Mayor

13         Freeman, made a comment to the effect of "Oh, we're familiar with Ms Henry" while

14         making prolonged eye contact with Ms. Henry.

15   2.141        After introductions, Mayor Freeman began making comments to the group about

16         the State respecting decisions made at the local level and then turned to glare at Henry.

17   2.142        By the accounts, Freeman was very vocal in the meeting about his displeasure

18         that Henry was at the meeting.

19   2.143        Freeman faced Henry, looking angry, and began talking about the content of

20         Henry's public comments in her October 30, 2020 e-mail to the local board before the

21         vote to remove Dr. Lutz.

22   2.144        Freeman stated something to the effect of "Amelia Clark has our full support and

23         you had no business saying those things."

24

25
     **COMPLAINT FOR WRONGFUL**              **SWEETSER LAW OFFICE, PLLC**
     **TERMINATION - 31**                    1020 N. Washington
                                             Spokane, WA 99201
                                             509-328-0678

2.145     Defendant Shah remained silent during the confrontational comments of Freeman directed at Henry.

2.146     At the February 8, 2021 meeting, Henry did not respond to Freeman, excused herself to the bathroom, and cried. Henry sent text messages to her direct supervisor, Defendant Todorovich, stating she had been singled out for "writing an e-mail as a private citizen (I never identified myself as a DOH employee or having any connection to PH). He tore me a new one in front of Dr. Shah."

2.147     In part of the texts back and forth, Defendant Todorovich said "And you have every right to express yourself as a private citizen to your local board."

2.148     Defendant Todorovich texted her own opinions of Clark and Freeman, stating that "[Clark] is not reasonable and pathetically set on being inward… Freeman sounds as petty as she is… They are both proof that Spokane is off their game… it's not outside the other attacks they've made."

2.149     Henry returned to the meeting and was directed to take notes by Dr. Shah, which she did without comment.

2.150     After the February 8, 2021 meeting, while still in the same building, Freeman confronted Henry a second time while she was alone.

2.151     At the end of the February 8, 2021 meeting, Spokane County Commissioner for District 2, Mary Kuney, who represents Henry as a County Commissioner, handed Defendant Secretary Shah an envelope labeled "Confidential, for Dr. Shah."

2.152     After the February 8, 2021 meeting, Henry told Defendant Secretary Shah she sent the October 30, 2020 email in her "non-DOH capacity."

2.153    Henry attempted to talk to Defendant Secretary Shah about Freeman's comments several times before the end of the day, conducting herself professionally and remaining composed for the rest of the day. Defendant Shah remained uninterested and preoccupied with other matters.

2.154    On February 8, 2021, at around 10 pm, Defendant Secretary Shah returned to his hotel room. Defendant Shah opened the envelope labeled "Confidential" that was handed to him by Spokane County Commissioner for District 2, Mary Kuney, who represents Henry as a County Commissioner. This envelope contained the e-mail sent by Henry on October 30, 2020 and other communications to the local health board from DOH employees.

2.155    Dr. Shah states that when he read Henry's e-mail he was emphatically "LIVID and SHOCKED" by the contents of the e-mail.

2.156    On February 9, 2021, at 6:29 am, Defendant Secretary Shah wrote an email to Defendant Todorovich directing they would have a discussion on "how to handle this situation moving forward." Defendant Shah signed this e-mail as "Secretary of Health[,] The Great State of Washington"

2.157    Defendant Todorovich did not tell Defendant Secretary Shah that she told Henry she had "every right to express yourself as a private citizen to your local board." Instead, Defendant Todorovich followed directives and initiated a formal complaint to open an investigation against Henry.

2.158    On February 12, 2021, Defendant Todorovich made an oral complaint to the Office of Human Resources against Henry. The complaint alleged that sending of the October 30, 2020 e-mail was an "off-duty activit[y] that appear[ed] to conflict with the

COMPLAINT FOR WRONGFUL
TERMINATION - 33

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

discharge of [Henry's] official duties." Defendant Todorovich stated "by sending [the October 30, 2020] e-mail, signed 'Erika Henry', she acted in a manner that conflicted with her official duties as the Acting Assistant Secretary of the Emergency Preparedness and Response Division (EPR)." Defendant Todorovich stated "that by not disclosing her actions prior to Dr. Shah's visit, Henry damaged the reputation of the agency and undermined Dr. Shah."

2.159    Defendant Todorovich's complaint alleged that Henry's actions violated Department of Health Policy 07.064, Outside Activities. This policy states "employees are permitted to engage in outside activities, including other employment, volunteering, and holding political office." The policy then provides specific restrictions around outside employment, volunteer activities, academic activities, and political office.

2.160    Defendant Todorovich's complaint alleged that Henry's actions violated Department of Health Policy 07.015, Ethics. This policy states "employees are encouraged to address and resolve potential ethics issues at the lowest level possible." When discussing political activities this policy states that no DOH employee can use or authorize the use of public resources, directly or indirectly, for a political campaign unless specifically authorized as part of the employee's official job duties. The policy cites to and is derived from RCW 42.52, which declares: "Government derives its powers from the people."

2.161    On February 12, 2021, Defendant Todorovich and Annie Manning called Erika Henry to a meeting at approximately 3:15 p.m. Henry was told she was being placed on home assignment due to Henry's October 30, 2020 email from four months prior. During this meeting, Henry stated that she wrote the letter as an impassioned citizen,

**COMPLAINT FOR WRONGFUL TERMINATION - 34**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

speaking for her family – to include her two children and husband who is a public-school teacher – over the firing of her local community health officer during an unprecedented pandemic.

2.162    On February 12, 2021, Defendant Todorovich emailed Erika Henry stating she was going to be reverted to a lower level of pay. Defendant Todorovich send this email in order to reduce back-pay damages in the anticipated event that Henry might appeal her termination or assert violation of her free speech rights.

2.163    Roy Calica from the Washington State Department of Health Office of Human Resources began an investigation. Henry fully cooperated in Calica's investigation.

2.164    Calica's first interview was of Clark, whom Henry had criticized in her private e-mail. This occurred on February 25, 2021. This interview revealed that "the Dr. Lutz termination situation has had a lot of media and public attention…" The interview "confirmed that Henry's email was sent to" her local health board members.

2.165    Calica then interviewed Dr. Lindquist, who was the new boss of Dr. Lutz at the Washington State Department of Health. This interview was on March 3, 2021 to find out the conversation between Dr. Lindquist and Lutz on February 18, 2021 "regarding the current situation with Ms. Henry." Lutz had shared his concern that Henry was being punished for the e-mail she sent on her personal time to Spokane local health board and that this was not appropriate.

2.166    Calica then interviewed Defendant Secretary Shah on March 5, 2021. This interview showed Defendant Secretary Shah had received the information about Henry's e-mail from an elected official who represents Ms. Henry. Defendant Secretary Shah explained he could see how Spokane's local health board had a problem with Henry

COMPLAINT FOR WRONGFUL
TERMINATION - 35

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

being employed there after her opinion was put out in this private e-mail to them. He expressed concerns with the content of the e-mail that was sent. Defendant Secretary Shah complained that Henry identified herself in the e-mail, and did not try to hide her identity. He stated, "had she used a more anonymous email address it would have been different."

2.167    Calica then interviewed Henry on March 5, 2021. Henry confirmed she sent the e-mail from e*****@gmail.com. Henry told Calica that she sent the e-mail from her home office, during personal time, and with her personal equipment. Henry stated that the punitive consequences by the Department of Health are making her feel like her rights are being taken away. Calica made a special note that Henry shared she submitted a public records request after being placed on administrative leave relating to the Spokane local health board's situation with Dr. Lutz.

2.168    Calica then interviewed Defendant Todorovich on March 5, 2021. Defendant Todorovich stated that Henry was "inappropriate in her communication" and failed to notify her government employer of the speech that was done in Henry's private capacity. Defendant Todorovich became emotional when she read Henry's e-mail, and then put Henry on home only duty. Defendant Todorovich agrees that people have a right to express themselves as a private citizen to their local health board. Defendant Todorovich had a problem with the full context, tone, rationale and content of Henry's e-mail. Defendant Todorovich did not produce all of her February 8 text messages that she sent to Henry.

2.169    Calica then interviewed Dr. Lutz on March 17, 2021. Lutz was asked about his association and relationship with Henry in the past. This included questions about her

**COMPLAINT FOR WRONGFUL TERMINATION - 36**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

1    husband's interactions in community events.  Lutz stated the investigation into Henry

2    felt like "collateral damage" for speaking out about his situation, and that he felt very

3    badly Henry's career was being adversely impacted.

4    2.170    On March 23, 2021 Calica issued findings for his investigation.  He alleged

5    sending the e-mail on October 30, 2021 was a conflict of interest with Henry's role as an

6    employee for the Washington State Department of Health.  He also alleged that Henry

7    should have reported her e-mail to her government employer, Secretary Shah.

8    2.171    Prior to Henry's firing, the Defendants knew that Henry had exercised her

9    constitutional rights as a citizen.

10    2.172    Prior to Henry's firing, the Defendants knew that a dispute had arisen between

11    Dr. Lutz and Clark about how best to respond to the public health crisis, and that

12    thousands of Spokane community members had spoken out against Clark and against the

13    removal of Lutz.

14    2.173    Prior to Henry's firing, the Defendants knew that Henry's email from her

15    personal account was a communication to her local health board about actual and

16    perceived dangers to the public and members of her community.

17    2.174    Prior to Henry's firing, the Defendants knew that termination of Henry presented

18    procedural and substantive legal risks.

19    2.175    Prior to Henry's firing, the Defendants knew the person who sent Henry to

20    SRHD's meeting with local board members, told Henry she had every right to express

21    her opinions to her local health board, and then filed the complaint against Henry, was

22    simultaneously being the one to determine Henry's level of discipline.

23

24

25

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 37**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.176    Prior to Henry's firing, the Defendants knew that Henry's free speech rights were not overridden by Defendant Secretary Shah's perceptions, fragile sensibilities, or intent to control messaging regarding covid.

2.177    Prior to Henry's firing, the Defendants knew there was an absence of evidence that Henry underperformed at her job or improperly allocated funds.

2.178    Prior to Henry's firing, the Defendants knew they had communicated negative opinions of Clark and Spokane's local health board to others, and had hired employees previously terminated by Spokane's local health board and SRHD.

2.179    Prior to Henry's firing, the Defendants knew that Henry was not forewarned she could face disciplinary action, up to and including discharge, for exercising her free speech rights on a matter of public concern.

2.180    Prior to Henry's firing, the Defendants knew they had not interviewed Spokane's local board members to determine what impact, if any, Henry's email had, among thousands received by the organization, on the local health board.

2.181    On May 19, 2021 Henry was fired by the Washington State Department of Health. This was a pretext firing for the wrong reasons to appease Spokane's local independent health board and to send a political message from Defendant Shah.

2.182    The decision to fire Henry was signed by Defendant Todorovich with the approval of Defendant Secretary Shah.

2.183    Henry's firing documentation alleges that Henry erred by sending the e-mail from e****@gmail.com and signing it "Erika Henry." By doing this Henry clearly made it known who she was and allegedly was tying the e-mail to her official role with the Washington Department of Health.

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 38**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.184    The first charge for the dismissal was the October 30, 2020 e-mail that Henry

sent from her personal account e*****@gmail.com, and closed with "Erika Henry."

The Defendants considered the content of the speech in the e-mail to be a reason for

termination.  Included in this is that Henry was critical of her local health board, and that

the "word choice and tone" was "disrespectful and inappropriate."  In particular the

Defendants criticized Henry's choice of words that she was "appalled" by the local

health board's support of Clark.  The Defendants also declared the content of the

communication, when Henry communicated that she felt Clark's actions as a

governmental official were "an embarrassment to [the Spokane] community" that the

"community is watching intently" were wrong.  The content of these communications

were declared to have violated the Department of Health Policy 07.064- Outside

activities; and RCW 42.52.020- Activities incompatible with public duties.

2.185    The second charge of dismissal was that Henry failed to inform the Washington

State Department of Health about the e-mail when Defendant Umair Shah became the

Secretary of Health.  The charge alleges that because of the content of the speech, Henry

should have been "markedly more sophisticated in her criticism" of her local health

board in the opinion of Defendant Secretary Shah.  The charge continues that Henry was

being terminated "based on the thoughts you expressed in your e-mail" and because she

had "expressed how you feel" about removal of Dr. Lutz "in a very public way."  The

content of these communications were declared to have violated Department of Health

Policy 07.015-Ethics.

2.186    On June 15, 2021 Henry appealed her firing to the Washington State Personnel

Resources Board.

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 39**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

2.187      On June 23, 2021 the Washington State Personnel Resources Board asked if she was willing to take the matter through mediation.

2.188      On August 6, 2021 the Washington Department of Health communicated that it was not interested in mediation in this matter.

2.189      To date, the Washington State Personnel Resources Board has refused to set any hearings and has not provided any notice of when it intends to consider Henry's appeal.

2.190      Henry has been made an example in front of the community and her co-workers.

2.191      Henry has been publicly embarrassed and humiliated for speaking out an opinion that is broadly shared and was communicated by thousands upon thousands of people in the Spokane community at the same time she did.

2.192      Henry's career and reputation were ruined to appease an independent local health board and to send a political message from Defendant Shah.

2.193      Henry has had to face financial ruin for exercising her freedom of speech.

2.194      Henry seeks relief from this Court.

### III. VIOLATION OF FREE SPEECH RIGHTS
### WRONGFUL TERMINATION

3.1   Citizens of Washington and the United States of America have the right to free speech.

3.2   Public employees do not surrender their First Amendment rights to speak freely on matters of public concern merely because they are employed by a public entity.

3.3   The State may not discharge or otherwise discipline an employee on a basis that infringes upon that employee's constitutionally protected interest in freedom of speech.

3.4   The First Amendment guarantees the freedom of speech, and prohibits government infringement of the freedom of speech. *U.S. Const. Amend. 1.*

COMPLAINT FOR WRONGFUL
TERMINATION - 40

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

3.5   Moreover, *Article 1, section 5* of the Washington Constitution provides greater protections than the First Amendment of the US Constitution.

3.6   Due Process requires public employers give employees reasonable notice of what is prohibited, and this principle is applied strictly when First Amendment regulations are involved in order to prevent chilling First Amendment rights.

3.7   A restriction is content neutral if it is subject matter neutral (*i.e.* it does not target speech based on its topic or communicative content) and viewpoint neutral (*i.e.* it does not target speech based on its motivation, ideology, opinion, or perspective).

3.8   Erika Henry was exercising her free speech rights as a citizen protected under the Washington State and US Constitutions when sending her October 30, 2020 e-mail to the local health board in her community.

3.9   Erika Henry was stating her opinion on a matter of public concern in her October 30, 2020 e-mail regarding an issue that had a lot of media and public attention.

3.10  In the October 30, 2020 e-mail, Ms. Henry did not claim to speak on behalf of the Washington State Department of Health.

3.11  In the October 30, 2020 e-mail, Ms. Henry did not mention the Washington State Department of Health.

3.12  Ms. Henry's October 30, 2020 e-mail was to elected officials.

3.13  Ms. Henry's October 30, 2020 e-mail was in a public forum to elected officials sitting on her local board of health on a matter of public concern for which they were actively seeking public comment.

COMPLAINT FOR WRONGFUL
TERMINATION - 41

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

3.14  Erika Henry was not provided reasonable notice by the Department of Health that she
was prohibited from making public comments to her local health board in her
community.

3.15  Ms. Henry's direct supervisor, Defendant Jessica Todorovich, told Ms. Henry she had
"every right to express yourself as a private citizen to your local board."

3.16  Defendant Umair A. Shah joined the Department of Health after the October 30, 2020 e-
mail had been sent by Ms. Henry.

3.17  Defendant Umair A. Shah later disagreed with Ms. Henry putting her personal name on
the October 30, 2020 e-mail to her local board of health if it contained the views and
content of speech in the October 30, 2020 e-mail.

3.18  Defendant Jessica Todorovich's boss, Secretary Shah, made it known that he was "livid"
about the content of the October 30, 2020 e-mail, and Ms. Todorovich then similarly
disagreed with the context, tone, rationale and content of Ms. Henry's e-mail.

3.19  Defendant Umair A. Shah did not dispute that he knew Ms. Henry as a private citizen
has a right to contact her local board of health, but claimed Ms. Henry should have been
"markedly more sophisticated in [her] criticism."

3.20  The Defendants fired Ms. Henry on May 19, 2021.

3.21  The Defendants terminated Erika Henry's employment because of her speech to the
local health board in her own community.

3.22  The October 30, 2020 e-mail was the reason the Defendants fired Ms. Henry.

**COMPLAINT FOR WRONGFUL**
**TERMINATION - 42**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

3.23  The Defendants were deliberately indifferent to the rights of Erika Henry, and/or created a chilling effect that endangered these rights, which would not otherwise exist if not for the actions of the Defendants.

3.24  The Defendants' termination of Erika Henry was not content and viewpoint neutral.

### IV. VIOLATION OF PUBLIC POLICY PROTECTING FREE SPEECH

4.1  This was a pretext firing, for the wrong reasons, to appease Spokane's local independent health board and to send a political message from Defendant Shah.

4.2  The government can regulate the time, place, and manner in which public employee speech takes place depending upon the type of restraint and forum involved.

4.3  When a government rule or statute impacts a fundamental right (*e.g.* First Amendment rights) it will be upheld only if it can withstand strict scrutiny – the government must prove that its rule is necessary to achieve a compelling government interest.

4.4  Public forums are government properties historically open for speech activities and receive the most protection under the First Amendment. Similarly, designated public forums are government properties not historically open for speech activities but which have been thrown open by the government for such activities – either all the time or at specified times.

4.5  Restrictions on speech in public forums and designated public forums must: (i) be content neutral, (ii) be narrowly tailored to achieve a compelling state interest, and (iii) leave open ample channels of communication.

4.6  A restriction will be considered narrowly tailored if it does not burden more speech than is necessary to achieve a compelling government interest.

**COMPLAINT FOR WRONGFUL TERMINATION - 43**

4.7  A restriction will be deemed to leave open alternative channels of communication if ample reasonable means for communicating the idea are available.

4.8  A prior restraint is any governmental action that would prevent a communication from reaching the public. Prior restraints on the speech of government employees are greatly disfavored.

4.9  The Defendants' stated justification for firing Erika Henry was based on their interpretation of RCW 42.52.020, Washington Department of Health policy 07.015, and Washington Department of Health policy 07.064.

4.10  Defendant Umair A. Shah, the Secretary of Health for the State of Washington, stated his expectations would be for public employees such as Erika Henry to hide their identity when exercising free speech. He stated, "had she used a more anonymous email address it would have been different."

4.11  Defendant Roy Calica stated Henry's October 30, 2020 email to her elected representatives from her personal gmail, by "signing it 'Erika Henry,' … clearly made it known who she was" and opined that Henry should have done something more to have "separated her off-duty actions and her official role." Defendant Calica also found it relevant to opine that "Dr. Shah was put in a precarious situation" when arguing that Henry was "unethical" for sending the October 30, 2020 email.

4.12  The Defendants expressly adopted an interpretation of these policies that does not leave open ample reasonable means to communicate personal opinions to a local health board in one's community.

**COMPLAINT FOR WRONGFUL TERMINATION - 44**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

4.13  The Defendants expressly adopted an interpretation of these policies that is overly broad and not narrowly tailored to achieve a compelling government interest.

4.14  The Defendants expressly adopted interpretation of these policies constitutes a prior restraint chilling free speech rights.

4.15  The Defendants expressly adopted an interpretation of their official policies, or have adopted a widespread or longstanding practice or custom, which is in conflict with recognized individual rights, and was a moving force that caused Ms. Henry to be wrongfully terminated.

4.16  The Defendants fired Erika Henry for exercising her protected rights.

4.17  The Defendants firing of Erika Henry contravened a clear mandate of public policy that society places the highest priority on the protection of human life.

4.18  The Defendants' rules, statutes, and application of its policies are unconstitutional.

4.19  A permanent injunction should enjoin the individual Defendants and Defendant Department of Health, its officers, agents, successors, assigns, and all persons in active concert or participation with it from unlawfully maintaining policies, practices, or customs in conflict with recognized individual rights.

## V. <u>VIOLATION OF FREE SPEECH RIGHTS<br>DISCRIMINATORY RETALIATION</u>

5.1  Ms. Henry's October 30, 2020 e-mail was motivated by a concern for the welfare of the general public.

COMPLAINT FOR WRONGFUL                    SWEETSER LAW OFFICE, PLLC
TERMINATION - 45                              1020 N. Washington
                                              Spokane, WA 99201
                                              509-328-0678

5.2    Regardless of who adopted the views or content expressed in Ms. Henry's October 30, 2020 e-mail, right or wrong, Henry was exercising her freedom of speech to further the public welfare of her own community.

5.3    The State Employee Whistleblower Act is intended to protect the rights of state employees who are encouraged to disclose improper governmental actions.

5.4    When a public employee legitimately believes there is a danger to the public, the public has the right to know.

5.5    To suppress free speech is a double wrong because it violates the rights of the hearer as well as those of the speaker.

5.6    The most dangerous thing is when good people stand by and say nothing.

5.7    It is an unfair practice for a government agency or government manager or supervisor to retaliate against a whistleblower communicating to their own elected officials.

5.8    Any person who is a whistleblower, as defined in RCW 42.40.020, and who has been subjected to workplace reprisal or retaliatory action is presumed to have established a cause of action for the remedies provided under chapter 49.60 RCW.

5.9    An employee who in good faith provides information to public officials is the definition of a "whistleblower." RCW 42.40.020(10).  This includes reporting to an appropriate number of public officials or individuals designated to receive reports by the head of each agency, as well as reporting of improper governmental action to the incorrect public officials or individuals if the employee is under a belief he or she is reporting to the proper persons.

**COMPLAINT FOR WRONGFUL TERMINATION - 46**

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

5.10  RCW 42.40.010 protects the rights of state employees identifying government violations of law, abuse of authority, or dangers to the public regardless of whether an investigation is initiated under RCW 42.40.040.

5.11  Henry's October 30, 2020 e-mail was sent to Spokane's local health board members in her own community who had the authority to investigate, discipline, reinstate or remove either Health Officer Lutz or Administrator Clark.

5.12  Henry's October 30, 2020 e-mail was sent to Spokane's local health board members who made the final decision about Dr. Lutz's removal.

5.13  Henry's October 30, 2020 e-mail sent to public officials her concerns involving violations of law, abuse of authority, gross incompetence, and dangers to the public.

5.14  Henry's October 30, 2020 e-mail was sent to Spokane's local health board members who were public officials and the decisionmakers for the agency on the issue.

## VI. DAMAGES

6.1  Compensatory Damages:  Ms. Henry has suffered economic damages of lost wages, terminated employment and benefits, reduced social security and retirement income (PERS2) and potentially reduced future earning capacity.  The Plaintiffs as a family have all suffered a loss of consortium.  The calculation of Ms. Henry's damages will be proven at trial.  Ms. Henry has suffered public humiliation and emotional distress and other non-economic damages for the jury to determine.

6.2  Nominal Damages:  The invasion of an important right can and will give rise to damages, even if the invasion is not economic in character.  Because of the importance

COMPLAINT FOR WRONGFUL
TERMINATION - 47

SWEETSER LAW OFFICE, PLLC
1020 N. Washington
Spokane, WA 99201
509-328-0678

of the First Amendment rights, they are to be afforded damages so they can be vindicated in our courts.

6.3    Punitive Damages:  Punitive damages are to punish and deter the Defendants as well as others like the Defendants from committing the same conduct in the future.  These can be awarded even where there are nominal damages without compensatory damages to protect fundamental First Amendment rights.

WHEREFORE, Plaintiffs respectfully request the following relief:

1.    A joint and several judgment against all Defendants for an award of economic and noneconomic damages as allowed by law;

2.    Injunctive relief pursuant to RCW 49.60.030;

3.    A declaratory judgement that RCW 42.52.020, Washington Department of Health's policy 07.015, Washington Department of Health's policy 07.064 are unconstitutional and void;

4.    Punitive damages pursuant to 41 U.S.C. 1983;

5.    Reasonable attorney fees, costs, and prejudgment interest as allowed by law;

6.    Tax consequences associated with recovery, if any;

7.    Any other relief the court determines to be just, equitable and applicable under the law.

///

///

///

**COMPLAINT FOR WRONGFUL
TERMINATION - 48**

**SWEETSER LAW OFFICE, PLLC**
1020 N. Washington
Spokane, WA 99201
509-328-0678

1    DATED at Spokane, Washington, this ___8th___ day of February, 2022.

2

3                                    SWEETSER LAW OFFICE, PLLC

4

5                                    JAMES R. SWEETSER, WSBA No. 14641
                                     MARCUS SWEETSER, WSBA No. 52895
6                                    ISAIAH T. PETERSON, WSBA No. 49794
                                     MARSHALL CASEY, WSBA No. 42552
7                                    Attorneys for Plaintiffs
                                     1020 N. Washington
8                                    Spokane, WA 99201
                                     Tele No: 509-328-0678
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COMPLAINT FOR WRONGFUL**                    **SWEETSER LAW OFFICE, PLLC**
**TERMINATION - 49**                                1020 N. Washington
                                                    Spokane, WA 99201
                                                    509-328-0678