FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 29, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERIKA HENRY and DANIEL HENRY, wife and husband, K.H., a minor child, and B.H. a minor child,<br><br>     Plaintiffs,<br><br> v.<br><br>WASHINGTON STATE DEPARTMENT OF HEALTH, UMAIR A. SHAH, JESSICA TODOROVICH, ROY CALICA, and JOHN DOES 1-10,<br><br>     Defendants. | No. 2:22-cv-00046-MKD<br><br>ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY<br><br>AND<br><br>GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT<br><br>**ECF Nos. 39, 46, 48, 51** |

On October 13, 2023, the Court conducted a hearing on pending motions. ECF No. 78. Marshall Casey and Marcus Sweetser appeared on behalf of Plaintiffs. Nicholas Ulrich appeared on behalf of Defendants. The Court has reviewed the motions and the record, has heard from counsel, and is fully informed. The Court (1) denies Plaintiffs' Motion to Certify Questions to the Washington Supreme Court, ECF No. 48; (2) grants in part and denies in part Defendants' Motion for Summary

ORDER - 1

Judgment, ECF No. 39; (3) grants in part and denies in part Plaintiffs' Motion for

Summary Judgment on Preliminary Elements Under U.S. Constitution, ECF No. 46,

and (4) denies as moot Plaintiffs' Summary Judgment Motion on Wrongful

Termination in Violation of the Washington Constitution, ECF No. 51.

**BACKGROUND**

**A. Factual History**

On September 16, 2014, Plaintiff Erika Henry began working for Defendant

Washington State Department of Health ("Department").  ECF No. 69 at 2 ¶ 1; ECF

No. 42-1 at 8.  She previously worked for the Spokane Regional Health District

("SRHD"), a local health jurisdiction.  ECF No. 40 at 1 ¶ 2; ECF No. 56 at 2 ¶ 2;

ECF No. 69 at 2 ¶ 3.  SRHD is governed by its Board of Health ("SRHD Board"),

whose members are local elected officials and appointees.  ECF No. 47 at 2 ¶ 1.1;

ECF No. 62 at 2 ¶ 1.1.  During the period relevant to this case, Henry lived within

SRHD's jurisdiction and was a constituent of Mary Kuney, an SRHD Board

member.  ECF No. 25 at 35 ¶ 2.103; ECF No. 32 at 13 ¶ 2.103.

On July 1, 2020, Henry took the position of Assistant Secretary of Health for

Emergency Preparedness and Response for the Department, as an acting

appointment.  ECF No. 40 at 2 ¶ 4; ECF No. 56 at 2 ¶ 3; ECF No. 42-1 at 2.

Defendant Jessica Todorovich, the Department's Chief of Staff, was Henry's direct

supervisor and appointing authority.  ECF No. 69 at 2 ¶ 2.

On October 30, 2020, media outlets reported that SRHD's Public Health Officer, Bob Lutz, had been fired. ECF No. 69 at 2 ¶ 4. That day, Henry emailed the following message to SRHD's Board members and Administrative Officer Amelia Clark from a personal, @gmail.com email address:

Subject: expect better from [the SRHD Board]

I'm writing to say that I am appalled by the [SRHD Board] support of Amelia Clark's baseless claims against Dr Lutz. Many of you know him personally and professionally, have for years. Yet you let an insecure weakling of a leader strong arm you into ousting him based on vague claims of what.... personality conflict? Tell her to grow up and do her job. People disagree with her because she makes impulsive decisions based on her own ego and inability to appear wrong. She is weak, and today the [SRHD Board] is no better. You sought no further evidence or testimonials from peers who actually know what they're talking about. You didn't consider his demonstrated performance and leadership before and during a global pandemic, the fact that his work is lauded regionally and statewide. Instead you've supported an action that endangers our public health response and, more egregiously, the actual health of the public.

I anticipate this will come to a public forum, perhaps within a few hours. When it does, I hope Amelia's inadequacies are exposed; she has been promoted to the level of her incompetence. One who cowers from criticism can't possibly lead in a time as trying as this, and certainly not for an agency as critical to our community as SRHD. It is the leader's responsibility to step beyond the comfort of their ego, to confront the challenges of our community, and to work with her own staff at all levels to ensure the most appropriate response to this public health crisis. She is unable to do that, instead calling on her friends to just make her problem go away.

ORDER - 3

Do you see that your actions have validated her lack of fortitude? You've shown her and our community that she can continue leading through conflict avoidance, selfish motives, and a little help from her [SRHD Board] buddies. What an embarrassment to this community.

Not all of you support Amelia. I hope you argued loudly and expect you will continue to do so. Let her know how insufficient her "leadership" is.

There could be an opportunity to right this wrong, though the consequences of [the SRHD Board's] initial actions will unfortunately ripple for months. What you do next will be an historic display of your values and alliances. Are you with facts and reason, or are you with baseless accusations and whining? Your community is watching intently.

Erika Henry

ECF No. 40 at 3-4 ¶ 13; ECF No. 56 at 3-4 ¶ 13; ECF No. 42-2 at 3 ("email from a personal account"), 35.

On December 20, 2020, Defendant Umair Shah was appointed as the Department's Secretary of Health. ECF No. 69 at 2 ¶ 6. Shah traveled to Spokane to meet with the SRHD Board on February 8, 2021, and Todorovich asked Henry to accompany Shah. ECF No. 40 at 5 ¶¶ 20-21; ECF No. 56 at 5 ¶¶ 20-21.

At the meeting, an SRHD Board member confronted Shah about Henry's email. ECF No. 40 at 6 ¶ 26; ECF No. 56 at 6 ¶ 26. Henry was distraught and texted Todorovich afterward, stating the SRHD Board member "tore [her] a new one in front of" Shah. ECF No. 40 at 7 ¶ 31; ECF No. 56 at 7 ¶ 31; ECF No. 42-2 at 36.

ORDER - 4

In that text conversation, Henry told Todorovich about her email, describing it as "an email as a private citizen (I never identified myself as a [Department] employee or having any connection to [public health])." ECF No. 42-2 at 36-38; ECF No. 69 at 3 ¶ 11. Todorovich responded, "you have every right to express yourself as a private citizen to your local board." ECF No. 42-2 at 36. An SRHD Board member later gave Shah a copy of the email. ECF No. 40 at 8 ¶ 37; ECF No. 56 at 8 ¶ 37.

A few days later, Todorovich reported Henry to the Department's Office of Human Resources because of the email. ECF No. 40 at 9 ¶ 40; ECF No. 56 at 8-9 ¶ 40. The Office of Human Resources assigned Defendant Roy Calica to investigate, and he completed an investigation report in March 2021. ECF No. 40 at 9 ¶ 41; ECF No. 56 at 9 ¶ 41; ECF No. 42-2 at 16-34.

On May 19, 2021, Todorovich sent Henry a disciplinary letter terminating her employment, citing the email, and Henry's failure to inform Department leadership of the email before February 8, 2021, as the reasons for the decision. ECF No. 69 at 3-4 ¶ 13; ECF No. 42-2 at 3-4, 7.

## B. Procedural History

In February 2022, Erika Henry, her husband Daniel Henry, and their children, K.H. and B.H., filed suit in Spokane County Superior Court against the Department, Shah, Todorovich, and Calica. ECF No. 1-1. Defendants removed the case to

federal court.  ECF No. 1.  On October 18, 2022, Plaintiffs filed an Amended

Complaint.  ECF No. 25.

The Amended Complaint brings claims alleging (1) Henry's wrongful

termination in violation public policy under the Washington Constitution;

(2) Henry's wrongful termination in violation of public policy under the First

Amendment of the U.S. Constitution; (3) violation of Henry's First Amendment

right by retaliation, pursuant to 42 U.S.C. § 1983; and (4) loss of consortium for

Henry's husband and children.  ECF No. 25 at 53-73.

## PLAINTIFFS' MOTION TO CERTIFY

Plaintiffs seek to certify the following five questions to the Washington

Supreme Court:

> 1.    Does the Washington Constitution give less protections to a government employee than to every other person in Washington, when the government employee speaks outside of their employment, in their private capacity, and in a public forum?
>
> 2.    Does the government's status as an employer give it a compelling interest to restrict speech done in a public forum under the Washington Constitution?
>
> 3.    Does terminating a government employee for petitioning the government as a private citizen violate the public policy of the Washington Constitution?
>
> 4.    Can the Department of Health policies that restrict outside activities and use of state resources for private gain, restrict a government employee from communicating on their own personal time to their elected and appointed government leaders?

ORDER - 6

5.    Is one who has established a cause of action for the violation of a fundamental right entitled to recover damages for (a) the harm to the interest resulting from the violation; (b) the mental distress proved to have been suffered; and (c) special damages of which the violation is a legal cause?

ECF No. 48 at 2-3.

**A. Legal Standard**

In a diversity case, a federal court must seek "to approximate state law as closely as possible in order to make sure that the vindication of the state right" is not affected by the federal forum. *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019) (en banc) (quoting *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)) (quotation marks omitted). "If the state's highest appellate court has not decided the question presented," then the federal court "must predict how the state's highest court would decide the question." *Id.* (citation omitted). If allowed by state law, the federal court may "exercise [its] discretion to certify a question to the state's highest court." *Id.* (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). The Ninth Circuit instructs courts to consider four factors in this analysis:

(1)    whether the question presents "important public policy ramifications" yet unresolved by the state court;
(2)    whether the issue is new, substantial, and of broad application;
(3)    the state court's caseload; and
(4)    "the spirit of comity and federalism."

1   *Id.* at 1072 (quoting *Kremen v. Cohen*, 325 F.3d 1035, 1037-38 (9th Cir. 2003)).

2   "[C]ertification is especially appropriate when a question of law has not been clearly

3   determined by the Washington courts, and the answer to [the] question is outcome

4   determinative."  *Potter v. City of Lacey*, 46 F.4th 787, 791 (9th Cir. 2022) (citation

5   and quotation marks omitted).

6          RCW 2.60.020 authorizes certification "[w]hen in the opinion of any federal

7   court before whom a proceeding is pending, it is necessary to ascertain the local law

8   of [Washington] in order to dispose of such proceeding and the local law has not

9   been clearly determined . . . ."  *See also Nwauzor v. GEO Grp., Inc.*, 62 F.4th 509,

10  513 (9th Cir. 2023).  Certification is governed by the Washington Supreme Court's

11  Rules of Appellate Procedure (RAP).  In relevant part, Wash. RAP 16.16(a) provides

12  as follows:

13          The Supreme Court may entertain a petition to determine
            a question of law certified to it under the [Certification
14          Act] if the question of state law is one which has not been
            clearly determined and does not involve a question
15          determined by reference to the United States Constitution.

16  **B. Discussion**

17          Under the federal and state standards for certification, certification of

18  Plaintiffs' proposed questions would not be appropriate here.

19          Washington courts have "adopted the tort of wrongful discharge in violation

20  of public policy as a narrow exception to the at-will [employment] doctrine."

ORDER - 8

*Martin v. Gonzaga Univ*, 425 P.3d 837, 842 (Wash. 2018).  To succeed on such a claim, a plaintiff must first demonstrate that her discharge "may have been motivated by reasons that contravene a clear mandate of public policy."  *Id.* at 843 (citation and quotation marks omitted).  This tort applies to limited scenarios, including "where employees are fired for exercising a legal right or privilege."  *Id.*

The Washington courts have emphasized that the tort of wrongful termination in violation of public policy is "narrow," "should be applied cautiously," and must be premised on a policy that is "truly public and sufficiently clear."  *Danny v. Laidlaw Transit Servs., Inc.*, 193 P.3d 128, 131 (Wash. 2008)  (quoting *Sedlacek v. Hillis*, 36 P.3d 1014, 1019-20 (Wash. 2001)) (quotation marks omitted); *see also Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139, 1142 (Wash. 2015).  The Washington Supreme Court has expressed its reluctance to recognize new state public policy without legislative involvement: "the Legislature is the fundamental source for the definition of [Washington's] public policy, and [this court] must avoid stepping into the role of the Legislature by actively creating the public policy of Washington."  *Sedlacek*, 36 P.3d at 1019.  "An argument for the adoption of a previously unrecognized public policy under Washington law is better addressed to the Legislature."  *Id.* (citing *State v. Jackson*, 976 P.2d 1229, 1235 (Wash. 1999)).  This approach "protects employers from having to defend against amorphous claims of public policy violations . . . ."  *Rose*, 358 P.3d at 1142.

ORDER - 9

Similarly, the Washington courts have consistently rejected invitations to recognize a state common-law constitutional tort.  *See Sys. Amusement, Inc. v. State*, 500 P.2d 1253, 1254 (Wash. Ct. App. 1972); *Spurrell v. Bloch*, 701 P.2d 529, 534-35 (Wash. Ct. App. 1985), *review denied*, 104 Wash.2d 1014 (Wash. 1985); *Reid*, 961 P.2d at 342-43; *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001) (citing *Reid v. Pierce Cnty.*, 961 P.2d 333 (Wash. 1998)), *review denied*, 52 P.3d 520 (Wash. 2002); *Hannum v. Wash. State Dep't of Licensing*, 181 P.3d 915, 919 (Wash. Ct. App. 2008); *Janaszak v. State*, 297 P.3d 723, 734 (Wash. Ct. App. 2013); *U4IK Gardens, LLP v. State*, 18 Wash. App. 2d. 1029, at *6 (Wash. Ct. App. 2021) (unpublished), *review denied*, 498 P.3d 960 (Wash. 2021).  The Court is unpersuaded that the Washington courts would reconsider these holdings simply because Plaintiffs have characterized their common-law constitutional tort claims as common-law wrongful-termination tort claims.

The proposed questions do not concern state-law issues that have not been clearly determined.  *See* Wash. RAP 16.16(a).  Plaintiffs' Motion to Certify is denied.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

A party may move for summary judgment on part of a claim or defense.  Fed. R. Civ. P. 56(a).  The court must grant summary judgment "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A movant who does not bear the burden of persuasion at trial can succeed on summary judgment either by producing evidence that negates an essential element of the nonmoving party's claim or defense, or by showing that the nonmoving party lacks sufficient evidence to prove an essential element. *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A movant who bears the burden of persuasion at trial must show that no reasonable trier of fact could find other than for the movant. *Engley Diversified, Inc. v. City of Port Orchard*, 178 F. Supp. 3d 1063, 1070 (W.D. Wash. 2016) (citing *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)).

**B. Defendants' Motion for Summary Judgment**

Defendants seek summary judgment on each of Plaintiffs' claims.  ECF No. 39.

   *1.  Wrongful Termination in Violation of Public Policy (Claims 1-2)*

Plaintiffs claim that Henry was wrongfully terminated in violation of two public policies: Article I, §§ 4-5 of the Washington Constitution (Claim 1), and the First Amendment of the U.S. Constitution (Claim 2).  ECF No. 25 at 53-54 ¶¶ 3.5-3.7, 60 ¶¶ 4.3-4.4, 65 ¶¶ 4.32-4.33.  Defendants seek summary judgment on both claims, arguing that no clear public policy was violated by Henry's termination for "sending public comments."[1]  ECF No. 39 at 17-20.

As explained above, for a plaintiff to succeed on a claim of wrongful discharge in violation of public policy, she must show a violation of public policy that has been "judicially or legislatively recognized."  *Rose*, 358 P.3d at 1142.

---

[1] Defendants also argue that Washington law provides no private cause of action analogous to 42 U.S.C. § 1983 for citizens to sue for violations of state constitutional rights.  ECF No. 39 at 4-5.  Washington does not recognize a common-law tort for violation of the state Constitution.  *Blinka*, 36 P.3d at 1102.  Claim 1 is premised upon the tort of wrongful discharge in violation of public policy, as explained above.

ORDER - 12

1    Plaintiffs have failed to identify a "clearly mandated public policy." *Danny*, 193

2    P.3d at 131.

3        Plaintiffs first argue that the First Amendment establishes a public policy that

4    is violated "when [the State] discharges an employee on a basis that infringes upon

5    that employee's constitutionally protected interest in freedom of speech."  ECF No.

6    25 at 65 ¶ 4.32; ECF No. 55 at 14.  Plaintiffs fail to cite any case in which

7    Washington courts recognized the First Amendment as a source of state public

8    policy; instead, they cite *Sprague v. Spokane Fire Department*, 409 P.3d 160 (Wash.

9    2018).  ECF No. 55 at 14.  *Sprague* involved a First Amendment retaliation claim

10   under Section 1983, not a state-law claim for wrongful termination in violation of

11   public policy based on the First Amendment.  *Sprague*, 409 P.3d at 169.

12       Plaintiffs also argue that the Washington Constitution "establishes a strong

13   public policy that the state is not to retaliate against citizens because it does not like

14   the content of their speech."[2]  ECF No. 25 at 53 ¶ 3.5.  The relevant provisions of the

15   Washington Constitution are (1) "[t]he right of petition and of the people peaceably

16   

17   [2] Plaintiffs also contend in the Amended Complaint that Henry's termination

18   "contravened a clear mandate of public policy that society places the highest priority

19   on the protection of human life."  ECF No. 25 at 58 ¶ 3.40.  Plaintiffs have not

20   pursued this theory in the instant briefing.  ECF No. 55 at 15-16.

ORDER - 13

to assemble for the common good shall never be abridged[,]" Wash. Const. Art. I, § 4, and "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right[,]" Wash. Const. Art. I, § 5. Plaintiffs fail to cite any case law in which the Washington courts have recognized Article I, §§ 4-5 of the Washington Constitution (or any other state constitutional provision) as a sufficiently clear public policy for purposes of the tort of wrongful discharge. ECF No. 55 at 15. Indeed, one of Plaintiffs' cited cases, *Richmond v. Thompson*, 922 P.2d 1343, 1349-50 (Wash. 1996) noted that both provisions contain qualifying clauses and therefore cannot be read to confer absolute rights of petition and speech. This underscores that the text of these provisions, without more, does not provide a sufficiently clear statement of public policy. *See Danny*, 193 P.3d at 131.

Absent judicial or legislative recognition that these provisions establish public policy for the purposes of the tort of wrongful termination, employers would be forced to defend against amorphous claims whenever a plaintiff could link that termination to their speech or petition activities. *See Rose*, 358 P.3d at 1142. Plaintiffs have failed to demonstrate that these constitutional provisions amount to a sufficiently clear public policy that is actionable under Washington's common-law tort of wrongful discharge in violation of public policy.

Claims 1 and 2 require what *Blinka* and numerous other decisions, as cited above, rejected. There is no state-law cause of action for damages based upon

1    violations of the Washington Constitution without the aid of augmentative

2    legislation.  Framing such a claim as arising under Washington's common-law

3    wrongful discharge in violation of public policy is only an attempt to circumvent this

4    conclusion.

5        The Court grants summary judgment for Defendants on Plaintiffs' claims for

6    wrongful termination in violation of public policy.

7        *2.  First Amendment Retaliation Under Section 1983 (Claim 3)*

8            a.  Department of Health

9        Defendants argue for summary judgment on Henry's Section 1983 claim

10   against the Department, contending that as a state agency, it is not a "person" subject

11   to suit under Section 1983.  ECF No. 39 at 3-4.  Plaintiffs did not respond to this

12   argument in the briefing.  At the hearing, Plaintiffs contended they had not brought a

13   Section 1983 claim against the Department.  This contention is at odds with the

14   language of Section 1983 claim, as set forth in the Amended Complaint.  *See, e.g.*,

15   ECF No. 25 at 72 ¶ 5.40 ("A permanent injunction should enjoin the individual

16   Defendants and *Defendant Department of Health* . . . .") (emphasis added).

17       Plaintiffs concede the issue, pursuant to LCivR 56(e).  Moreover, it is

18   undisputed that the Department is a state agency and therefore not subject to suit

19   under Section 1983.  *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928

20   (9th Cir. 2017); *French v. Wash. State Dep't of Health*, 735 F. App'x 367 (9th Cir.

1  2018) (affirming dismissal of Section 1983 claim against the Department as "a state

2  agency immune from suit under [Section] 1983").  The Court grants summary

3  judgment as to Henry's Section 1983 claim against the Department.

4         b.  Individual Defendants

5       Defendants argue for summary judgment as to Henry's Section 1983 claims

6  against Defendants Shah, Todorovich, and Calica (collectively the "Individual

7  Defendants") on qualified immunity grounds—namely, that they did not violate any

8  clearly established First Amendment right.  ECF No. 39 at 5-6.

9       "The doctrine of qualified immunity protects government officials 'from

10  liability for civil damages insofar as their conduct does not violate clearly

11  established statutory or constitutional rights of which a reasonable person would

12  have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

13  *Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[A]n officer may be denied qualified

14  immunity at summary judgment in a Section 1983 case 'only if (1) the facts alleged,

15  taken in the light most favorable to the party asserting injury, show that the officer's

16  conduct violated a constitutional right, and (2) the right at issue was clearly

17  established at the time of the incident such that a reasonable officer would have

18  understood his conduct to be unlawful in that situation.'"  *Isayeva v. Sacramento*

19  *Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017) (quoting *Hughes v. Kisela*, 862

20  F.3d 775, 783 (9th Cir. 2016)) (alteration omitted); *see also Ellins v. City of Sierra*

1  *Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) ("For purposes of qualified immunity,

2  [courts] resolve all factual disputes in favor of the party asserting the injury.").

3        i.  Violation of a Constitutional Right

4        Henry contends that her October 30, 2020, email was speech protected by the

5  First Amendment, and therefore the Individual Defendants violated her First

6  Amendment rights by terminating her in retaliation for that speech.  ECF No. 25 at

7  68-69 ¶¶ 5.20-5.23; ECF No. 55 at 13.

8        "It is well settled that the state may not abuse its position as employer to stifle

9  'the First Amendment rights [its employees] would otherwise enjoy as citizens to

10  comment on matters of public interest.'"  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th

11  Cir. 2009) (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S.

12  563, 568 (1968)) (alteration in original).  Courts must assess the First Amendment

13  claims of public employees by balancing the employee's interest "as a citizen, in

14  commenting upon matters of public concern," and the state's interest "as an

15  employer, in promoting the efficiency of the public services it performs through its

16  employees."  *Id.* (quoting *Pickering*, 391 U.S. at 568) (quotation marks omitted).  To

17  do so, courts apply "a sequential five-step series of questions," referred to as the *Eng*

18  factors.  *Greisen v. Hanken*, 925 F.3d 1097, 1108 (9th Cir. 2019) (quoting *Eng*, 552

19  F.3d at 1070).

20

ORDER - 17

(1) Speech on a Matter of Public Concern

Under the first *Eng* factor, the plaintiff must show that the speech at issue addressed a matter of public concern. *Eng*, 552 F.3d at 1070. Defendants concede that Henry's email related to a matter of public concern. ECF No. 39 at 8.

(2) Speech as a Private Citizen

Under the second *Eng* factor, the plaintiff must show she spoke in the capacity of a private citizen, not a public employee. *Eng*, 552 F.3d at 1071. A statement is made in the speaker's capacity as a private citizen "if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Id.* (citing *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008)). It is relevant but not dispositive, if the employee's speech occurred at work, concerned "the subject matter of [his or her] employment," or fell within the scope of the employee's formal job description. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1069 (9th Cir. 2013) (en banc) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420-21, 424-25 (2006)) (quotation marks omitted). "[W]hether the plaintiff spoke as a public employee or a private citizen . . . is a mixed question of fact and law." *Posey*, 546 F.3d at 1129. Where there are "genuine disputes of material fact regarding the scope and content of [the plaintiff's] job responsibilities," that issue "can and should be found by a trier of fact . . . ." *Id.*

ORDER - 18

1    Although Henry's formal job description is not dispositive, there are disputes

2    of fact about what her job required, and whether sending the email fell within that

3    description.  ECF No. 39 at 9-10; *see Dahlia*, 735 F.3d at 1069.  Defendants contend

4    that Henry's official duties "directly involved interacting with local public health

5    district[s]" like SRHD.  ECF No. 39 at 9-10 (citing language from ECF No. 42-2 at

6    2); *see also* ECF No. 42-2 at 41-52.  Plaintiffs dispute that this accurately reflects

7    Henry's official duties, citing her testimony that she did not recognize the job

8    description referenced by Defendants.  ECF No. 56 at 2-3 ¶¶ 5-6 (citing ECF No. 57-

9    4 at 4).  Plaintiffs also note that Todorovich has characterized Henry's actions on

10   October 30, 2020, as "off duty."  ECF No. 47 at 60 ¶ 1.245 (citing ECF No. 49-9 at

11   44-45); *see also* ECF No. 42-2 at 1.

12      Defendants further contend that, because SRHD Board members perceived

13   Henry to have spoken in the capacity of a public employee, Henry cannot establish

14   that she spoke as a private citizen.  ECF No. 39 at 10.  The perception of the SRHD

15   Board members is in dispute.  One member testified that she perceived the email as

16   from "[a] member of the Spokane community."  ECF No. 49-38 at 31.  One member

17   testified that the email did not "reflect . . . any government communication."  ECF

18   No. 49-36 at 15.  In any event, Defendants cite no authority indicating that the way

19   the speech was interpreted by the recipient controls this analysis.

20

1    Factual disputes remain which preclude a finding that Henry's speech was that

2   of a public employee as a matter of law.

3                      (3) Substantial or Motivating Factor

4        Under the third *Eng* factor, the plaintiff must show her protected speech was a

5   substantial or motivating factor in an adverse employment action she suffered.  *Eng*,

6   552 F.3d at 1071.  Defendants concede that the October 30, 2020, email was a

7   motivating factor for Henry's termination.  ECF No. 39 at 8.

8                         (4) Adequate Justification

9        Under the fourth *Eng* factor, the defendant bears the burden of showing its

10  actions were adequately justified by "legitimate countervailing interests" that

11  outweighed the employee's interests in free speech.  *Riley's Am. Heritage Farms v.*

12  *Elsasser*, 32 F.4th 707, 724-25 (9th Cir. 2022) (citation and quotation marks

13  omitted); *Eng*, 552 F.3d at 1071.  On an issue where it bears the burden of

14  persuasion at trial, a defendant must show that "no reasonable trier of fact could find

15  other than for the moving party."  *Engley Diversified*, 178 F. Supp. 3d at 1070.

16       "'Promoting workplace efficiency and avoiding workplace disruption' is a

17  valid government interest that can justify speech restrictions."  *Dodge v. Evergreen*

18  *Sch. Dist. #114*, 56 F.4th 767, 781 (9th Cir. 2022) (citing *Hufford v. McEnany*, 249

19  F.3d 1142, 1148 (9th Cir. 2001)) (alteration omitted).  But the employer must show

20  either an "actual, material, and substantial disruption" to the workplace or

ORDER - 20

"reasonable predictions" of such a disruption. *Id.* at 782 (quoting *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009)) (quotation marks omitted). Employers "must make a stronger showing of disruption when the speech deals directly with issues of public concern." *Id.* (quoting *Robinson*, 566 F.3d at 826) (quotation marks and alterations omitted). "Speech that outrages or upsets co-workers without evidence of 'any actual injury' to [workplace] operations does not constitute a disruption." *Id.* (citing *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 514 (9th Cir. 2004)).

Defendants first argue that Henry's email caused an actual disruption of the February 8, 2021 meeting. ECF No. 39 at 12-13. However, there are disputes of fact that bear on whether this amounted to an actual, material, and substantial disruption under the *Eng* test. For example, the parties dispute the tone and duration of the discussion of Henry's email at the meeting. ECF No. 40 at 6 ¶ 26, 7 ¶ 28 (citing ECF No. 41-1 at 10; ECF No. 41-2 at 7-13); ECF No. 56 at 6 ¶¶ 26, 28 (citing ECF No. 57-1 at 5-8; ECF No. 49-36 at 28; ECF No. 49-38 at 21). The parties also dispute the context of the Department's relationship with SRHD at the time of the meeting, and whether that relationship or other circumstances may have contributed to the events at the meeting. ECF No. 40 at 5 ¶ 20 (citing ECF No. 41-2 at 9); ECF No. 56 at 5 ¶ 20, 7 ¶ 30 (citing ECF No. 41-2 at 8-9; ECF No. 41-1 at 11).

Defendants also claim there was an actual disruption to their working relationship with SRHD and an anticipated disruption if there was a perceived

1   conflict of interest between Henry and SRHD.  ECF No. 39 at 12-13.  Plaintiffs

2   argue that these purported disruptions are pretextual reasons for Henry's

3   termination, as demonstrated by Defendants' "shifting justifications," such as

4   Todorovich's initial support for Henry after the February 2021 meeting, and

5   "disregard[]" of advice that they were violating Henry's rights.  ECF No. 55 at 3;

6   ECF No. 56 at 10 ¶ 49 (citing ECF No. 57-3 at 14-15); ECF No. 47 at 69 ¶ 1.286

7   (citing ECF No. 49-42 at 2).  Plaintiffs also note that Todorovich was unable to

8   provide specific details about the "multiple" confrontations she claimed had resulted

9   from Henry's email.  ECF No. 56 at 11 ¶ 52 (citing ECF No. 57-3 at 20-25).

10          Accordingly, Defendants have failed to demonstrate that no reasonable juror

11  could find other than for them as to whether Henry's termination was adequately

12  justified.

13                            (5) But-For Causation

14          Under the fifth *Eng* factor, the defendant "bears the burden of demonstrating

15  that it would have reached the same adverse employment decision even in the

16  absence of the employee's protected conduct."  *Eng*, 552 F.3d at 1072 (citation,

17  quotation marks, and alterations omitted).  Defendants do not dispute that Henry's

18  email was the but-for cause of her termination and therefore concede this factor.  *See*

19  ECF No. 39 at 8.

20

1    In sum, Plaintiffs have presented sufficient evidence to create a triable issue

2    regarding whether the Individual Defendants violated Henry's constitutional rights.

3    *See Dodge*, 56 F.4th at 783.

4                    ii.  Clearly Established Law

5        Next, Defendants argue that the Individual Defendants are entitled to qualified

6    immunity because it was not clearly established under the law at the time that Henry

7    was speaking as a private citizen.  ECF No. 39 at 14.

8        "To determine that a right was clearly established, the court 'must identify

9    precedent as of [the date of the alleged violation] that put [the defendant] on clear

10   notice' that his or her actions were unconstitutional."  *Greisen*, 925 F.3d at 1108-09

11   (quoting *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017))

12   (alterations in original).  A case does not need to be "'directly on point, but existing

13   precedent must have placed the statutory or constitutional question beyond debate.'"

14   *Id.* at 1109 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

15       When assessing qualified immunity on the second *Eng* factor, courts must

16   view the facts relating to the plaintiff's employment responsibilities in the light most

17   favorable to the plaintiff.  *Eng*, 552 F.3d at 1071; *Ellins*, 710 F.3d at 1064.  "[A]

18   reasonable official would have known that a public employee's speech on a matter

19   of public concern is protected" under the second *Eng* factor "if the speech is not

20   made pursuant to her official job duties, even if the [speech] itself addresses matters

ORDER - 23

1    of employment." *Greisen*, 925 F.3d at 1112-13 (citing *Karl v. City of Mountlake*

2    *Terrace*, 678 F.3d 1062, 1074 (9th Cir. 2012)) (quotation marks and alteration

3    omitted).

4         Viewing the facts in the light most favorable to Henry, *Freitag v. Ayers*, 468

5    F.3d 528 (9th Cir. 2006), is sufficiently analogous to inform a reasonable official

6    that Henry spoke as a private citizen in her October 30, 2023 email.  The plaintiff in

7    *Freitag* was a state correctional officer who submitted complaints to a state senator

8    and the state Inspector General about workplace sexual harassment, contending that

9    her supervisors were ignoring her concerns.  *Freitag*, 468 F.3d at 535.  Thereafter,

10   she was subjected to multiple internal investigations and ultimately terminated.  *Id.*

11   at 535-36.  She brought a claim under Section 1983 for First Amendment retaliation.

12   *Id.* at 536.

13        The Ninth Circuit concluded that the plaintiff "acted as a citizen" when she

14   voiced her complaints: "[h]er right to complain both to an elected public official and

15   to an independent state agency is guaranteed to any citizen in a democratic society

16   regardless of his [or her] status as a public employee."  *Id.* at 545 (citing *Pickering*,

17   391 U.S. at 568).  "The critical inquiry" was whether the plaintiff had "engaged in

18   the relevant speech pursuant to her official duties."  *Id.* (quoting *Garcetti v.*

19   *Ceballos*, 547 U.S. 410, 421 (2006)) (quotation marks and alteration omitted).  "It

20   was certainly not part of her official tasks to complain to the Senator or the

ORDER - 24

[Investigator General] about the state's failure to perform its duties properly, and specifically its failure to take corrective action" against workplace sexual harassment, but rather, her "responsibility *as a citizen* to expose such official malfeasance to broader scrutiny." *Id.* (emphasis in original).

Henry resided within SRHD's jurisdiction and was a constituent of an elected official who sat on the SRHD Board. ECF No. 49-39 at 5. Although the parties dispute the scope of Henry's job responsibilities, *see* ECF No. 56 at 2-3 ¶¶ 5-6, Defendants do not argue that it was part of her official duties with the Department to complain to SRHD Board members about the performance of the Board's Administrative Officer or decision to fire its Local Health Officer. *See Freitag*, 468 F.3d at 545. As such, Henry's right as a private citizen to complain about the performance of her local officials was clearly established law under *Freitag*.

Defendants argue that the controlling precedent at the time held that "an individual could be perceived as a public employee due to their association with their job and the context of their speech." ECF No. 39 at 14, 16 (citing *Kennedy v. Bremerton Sch. Dist.*, 991 F.3d 1004 (9th Cir. 2021) ("*Kennedy II*"), *overruled by* 142 S. Ct. 2407 (2022) ("*Kennedy III*")). The speech at issue in *Kennedy II*, decided two months before Henry was terminated, and Henry's email are not analogous. For example, the Ninth Circuit cited the following facts in concluding there was "simply

no dispute that [the coach's] position encompassed his post-game speeches to students." *Kennedy II*, 991 F.3d at 1016.

> Kennedy's employer specifically instructed him (1) that he should speak to players post-game and (2) what the speeches should be about: "You may continue to provide motivational, inspirational talks to students before, during and after games and other team activity, focusing on appropriate themes such as unity, teamwork, responsibility, safety, endeavor and the like that have long characterized your very positive and beneficial talks with students."

*Id.* The school superintendent later praised the coach for a "secular post-game speech" and encouraged the coach to continue such practices. *Id.* Therefore, "[t]he only conclusion based on this record is that [the coach's] post-game speech on the field was speech as a government employee." *Id.* Comparatively, here, there is no indication that Henry's employer instructed her to send emails to local health jurisdictions like SRHD from an unofficial account on public health topics, or praised her for doing so.

The Ninth Circuit's earlier analysis in *Kennedy v Bremerton School District*, 869 F.3d 813 (9th Cir. 2017) ("*Kennedy I*") is also instructive.[3] There, the court similarly concluded that the coach spoke as a public employee where his speech

---

[3] The *Kennedy II* court reaffirmed "that [its] conclusion in *Kennedy I*," that the coach had spoken as a public employee, "[wa]s correct." *Kennedy II*, 991 F.3d at 1016 (quoting *Kennedy I*, 869 F.3d at 831).

ORDER - 26

occurred "at a school event, on school property, wearing [school]-logoed attire, while on duty as a supervisor, and in the most prominent position on the field, where he knew it was inevitable that students, parents, fans, and occasionally the media, would observe his behavior." *Id.* at 827. The time, place, and circumstances of the coach's speech created an obvious connection to his role as a public employee. *See id.* No such context was present here, where Henry's email came from an unofficial account and did not mention her position with the Department; and where at least two Board members testified that they understood the email to be a communication from a constituent. ECF No. 42-2 at 35; ECF No. 49-38 at 31; ECF No. 49-36 at 15. As such, a reasonable official would not have interpreted *Kennedy II* to conclude that Henry's email was the speech of a public employee. *See Greisen*, 925 F.3d at 1108-09.

Ultimately, the Court must view the facts in the light most favorable to Henry, with respect to her employment responsibilities. *See Eng*, 552 F.3d at 1071; *Ellins*, 710 F.3d at 1064. Plaintiffs have identified precedent as of the date of her termination that put the Individual Defendants on notice that Henry's email was speech made as a private citizen in the form of a complaint to an elected public official. Defendants have not asserted there was a lack of clearly established law on any other aspect of Henry's Section 1983 claim. The Court therefore denies summary judgment for the Individual Defendants as to Henry's Section 1983 claim.

1    *3.  Loss of Consortium (Claim 4)*

2        Defendants argue that there is no cognizable legal theory, under state or

3    federal law, for Henry's family members' loss of consortium claim if there is no

4    underlying bodily injury.  ECF No. 39 at 20 (citing *Green v. A.P.C.*, 960 P.2d 912

5    (Wash. 1998); *Ueland v. Reynolds Metals Co.*, 691 P.2d 190 (Wash. 1984)).

6        Defendants raised this argument in their Fed. R. Civ. P. 12(b)(6) Motion to

7    Dismiss.  ECF No. 11 at 3-6.  The Court granted the Defendants' Motion to Dismiss

8    on the ground that because Plaintiffs failed to plead sufficient facts to state a loss of

9    consortium claim, and granted leave to amend the claims with adequate factual

10    allegations.  ECF No. 24 at 13.  Plaintiffs did so amend, and included further

11    allegations related to loss of consortium.  ECF No. 25 at 72-73.  The Court rejected

12    Defendants' argument that a loss-of-consortium claim could not be based on the tort

13    of wrongful termination due to the lack of bodily injury: "[p]ursuant to *Burchfiel*,

14    under Washington law, tortious injury is an essential element of a loss of consortium

15    claim, however, physical injury is not."  ECF No. 24 at 8 (citing *Burchfiel v. Boeing*

16    *Corp.*, 205 P.3d 145, 158 (Wash. Ct. App. 2009)).  Defendants provide no reason to

17    reconsider that determination.

18        As explained above, the Court grants summary judgment for the Department

19    on Henry's wrongful termination in violation of public policy and Section 1983

20    claims.  Therefore, Henry's family members cannot show that the Department

inflicted a tortious injury upon Henry from which her spouse and children could have suffered a loss of consortium. *See Burchfiel*, 205 P.3d at 158 ("Damages for loss of consortium are proper when a spouse suffers loss of love, society, care, services, and assistance *due to a tort committed against the impaired spouse*.") (emphasis added) (citation omitted). The Court therefore grants summary judgment for the Department on the loss of consortium claim as well.

As for the Individual Defendants, the Court has granted summary judgment in their favor on Henry's wrongful termination claims. Henry's Section 1983 claim against the Individual Defendants remains. Defendants also argue that Plaintiffs' loss of consortium claim is not recognized by federal law, arguing that Plaintiffs' "theory of the case" would allow any family member of a Section 1983 claim to bring a loss of consortium claim. ECF No. 39 at 20-21. However, neither Defendants nor Plaintiffs provide any legal authority, or specific arguments, as to whether a loss of consortium claim may be predicated on a family member's Section 1983 injury.[4]

---

[4] The Court notes that this question of law was not decided in the previous order on Defendants' Motion to Dismiss. At that time, the Court construed the original Complaint to contain a loss of consortium claim solely related to Henry's wrongful termination claims. ECF No. 24 at 8-9. When Plaintiffs repleaded loss of

ORDER - 29

1          Thus, the Individual Defendants have not demonstrated, as a matter of law,

2    that Plaintiffs cannot maintain a loss of consortium claim in relation to Henry's

3    Section 1983 claim against the Individual Defendants.  The Court denies summary

4    judgment for the individual Defendants on Plaintiffs' loss of consortium claim with

5    leave to refile if supported by argument and legal authority.

6    **C. Plaintiffs' Motion for Summary Judgment**

7          Plaintiffs move for summary judgment on three of the *Eng* factors underlying

8    their Section 1983 claim, ECF No. 46, and on overall liability for their claim for

9    wrongful termination in violation of the Washington Constitution, ECF No. 51.

10   Only Plaintiffs' Section 1983 claim and loss of consortium claim against the

11   Individual Defendants survive; therefore, Plaintiffs' summary judgment arguments

12   relating to the wrongful termination claims are denied as moot.

13        *1.  Conceded Eng Factors*

14         Plaintiffs seek summary judgment on the first and third *Eng* factors of the

15   Section 1983 claim—i.e., that Henry's October 30, 2020, email was speech on a

16   matter of public concern and a substantial or motivating factor for her termination.

17   _____

18   consortium in the Amended Complaint, they clarified that it was based on the

19   wrongful termination claims and Section 1983 claim alike.  ECF No. 25 at 72 ¶¶ 6.2-

20   6.3.

ECF No. 46 at 2.  Defendants have conceded these issues.  ECF No. 39 at 8; ECF No. 61 at 3; *see also* LCivR 56(3).  The Court grants summary judgment for Plaintiffs on the first and third *Eng* factors of their Section 1983 claim.

### 2.  Speech as a Private Citizen

Plaintiffs seek summary judgment on the second *Eng* factor—i.e., that Henry's email was the speech of a private citizen, not a public employee.  ECF No. 46 at 2.  As discussed above, there are disputes of material fact that prevent the Court from determining, as a matter of law, whether Henry spoke as a private citizen.  The Court denies summary judgment for Plaintiffs on the second *Eng* factor.

## CONCLUSION

The Court denies Plaintiffs' Motion to Certify.

The Court grants summary judgment for Defendant Washington State Department of Health on Henry's Section 1983 claim and the loss-of-consortium claim, and for all Defendants on Henry's two claims for wrongful termination in violation of public policy.  The Court denies summary judgment for Defendants Shah, Todorovich, and Calica on Henry's Section 1983 claim and on Plaintiffs' loss of consortium claim.

The Court grants summary judgment for Plaintiffs on the first and third *Eng* factors underlying Henry's Section 1983 claim, and denies summary judgment on

the second *Eng* factor of the Section 1983 claim and the state-law wrongful

termination claims.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendants' Motion for Summary Judgment, **ECF No. 39**, is

**GRANTED in part** and **DENIED in part** in the manner explained above.

2.     Plaintiffs' Partial Summary Judgment Motion on Preliminary Elements

Under U.S. Constitution, **ECF No. 46**, is **GRANTED in part** and **DENIED in part**

in the manner explained above.

3.     Plaintiffs' Summary Judgment Motion on Wrongful Termination in

Violation of the Washington Constitution, **ECF No. 51**, is **DENIED as moot**.

4.     Plaintiffs' Motion to Certify Questions to Washington Supreme Court,

**ECF No. 48**, is **DENIED**.

**IT IS SO ORDERED.**  The District Court Executive is directed to (1) enter

this Order, (2) provide copies to the parties, **(3) enter judgment for all Defendants**

**regarding Plaintiffs' state-law wrongful termination claims, and for Defendant**

**Washington State Department of Health regarding Plaintiffs' 42 U.S.C. § 1983**

**claim and loss of consortium claim, and (4) TERMINATE Defendant**

**Washington Department of Health from this matter.**

1    DATED March 29, 2024.

2              _s/Mary K. Dimke_
              MARY K. DIMKE
3       UNITED STATES DISTRICT JUDGE

ORDER - 33